FRED H. POPE, as Trustee in Bankruptcy of MILL CREEK GOLD MINES, LTD., Respondent, v. AUGUST HECKSCHER, Appellant.

(Argued November 20, 1934; decided December 31, 1934.)

*Frank A. Fritz* for appellant. The Canadian court obtained no jurisdiction of the person of the defendant by reason of the mailing to him in this State of the written demand. The money judgment rendered against the defendant is void and the first cause of action pleading that judgment is, therefore, insufficient in law. (*Pennoyer* v. *Neff*, 95 U. S. 714; *Wilson* v. *Seligman*, 144 U. S. 41; *Hilton* v. *Guyot*, 159 U. S. 113; *Riverside Mills* v. *Menefee*, 237 U. S. 189; *McDonald* v. *Mabee*, 243 U. S. 90; *Hess* v. *Pawloski*, 274 U. S. 352; *Grubel* v. *Nassauer*, 210 N. Y. 149; *Matter of McDonald*, 225 App. Div. 403; *Skandinaviska Granit Aktiebolaget* v. *Weiss*, 226 App. Div. 56; *Anderson* v. *Haddon*, 33 Hun, 435; *Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369.) The defendant by becoming a stockholder in the Canadian corporation did not bind himself to have his liability as a stockholder enforced by the Canadian bankruptcy courts in accordance with the procedure adopted as pleaded in the first cause of action. (*Royal Arcanum* v. *Green*, 237 U. S. 531; *Pennoyer* v. *Neff*, 95 U. S. 714; *Wilson* v. *Seligman*, 144 U. S. 41.) Notice such as that upon which the Canadian judgment is predicated does not constitute the basis for personal judgment against a

ñon-resident defendant when service thereof is not made within the territorial limits of the foreign jurisdiction. (*Wilson* v. *Seligman*, 144 U. S. 41.)

*James Marshall* and *Harold P. Seligson* for respondent. The Canadian court obtained jurisdiction over the defendant, and a complaint based upon the Canadian judgment states a good cause of action. By agreement in advance one may bind himself to submit his rights to a foreign tribunal and may agree in advance to the mode of service provided for by the laws of such foreign jurisdiction. (*Gilbert* v. *Burnstine*, 255 N. Y. 348; *Grover & Baker Machine Co.* v. *Radcliffe*, 137 U. S. 287; *Morris* v. *Douglass*, 237 App. Div. 747; *Copin* v. *Adamson*, 9 Exch. 345; *Montgomery, Jones & Co.* v. *Liebenthal & Co.*, [1898] 1 Q. B. 487; *Bank of Australasia* v. *Harding*, 137 Eng. Rep. 1052; *Hess* v. *Pawloski*, 274 U. S. 352; *Smolik* v. *Phila. & R. C. & I. Co.*, 222 Fed. Rep. 148.) The defendant by becoming a stockholder in the Canadian corporation bound himself under the Canadian law to have his liability to the corporation on his stock subscription, in the event of the corporation's bankruptcy, determined by the Canadian courts and to receive notice of such proceedings in the manner prescribed by the Canadian laws. (*Glenn* v. *Liggett*, 135 U. S. 533; *Harrigan* v. *Bergdoll*, 270 U. S. 560; *Converse* v. *Hamilton*, 224 U. S. 243; *Royal Arcanum* v. *Green*, 237 U. S. 531; *Conde* v. *City of Schenectady*, 164 N. Y. 258.) Comity particularly requires recognition of foreign judgments, in bankruptcy proceedings, arising in the domicile of a foreign corporation, and which determines the liability of its stockholders for unapid stock subscriptions. (*Canada Southern R. Co.* v. *Gebhard*, 109 U. S. 527.)

LOUGHRAN, J. The first cause of action declares upon a judgment of the Superior Court in Bankruptcy of a province in the Dominion of Canada for the balance unpaid upon a subscription by the defendant to the stock

of a Canadian corporation. This recovery, it is sufficiently alleged, was had at the suit of the plaintiff, the trustee in bankruptcy of the corporation, in full accordance with the laws of the Dominion of Canada, after service of process by mail directed to the defendant at his address in this State. It is also alleged: "That it is and at all times herein mentioned was the law of Canada that any person becoming a stockholder in a Canadian corporation thereby agreed to subject and did subject himself to the duties and liabilities imposed by the laws and statutes of Canada upon stockholders in such corporations, and further agreed to subject and did subject himself to the jurisdiction of the Canadian courts, and in particular to the jurisdiction of the Superior Court in Bankruptcy for the enforcement of said duties and liabilities." The fact of the foreign law must be taken as pleaded. (*Hanna* v. *Lichtenhein*, 225 N. Y. 579.) There is no allegation that the defendant in fact consented to be bound by the decree of any Canadian court. (Cf. *Gilbert* v. *Burnstine*, 255 N. Y. 348.) Is a personal liability, so fixed, to have force and effect in our courts?

The presumption in favor of recognition of a private right acquired under foreign law (*Dunstan* v. *Higgins*, 138 N. Y. 70; *Johnston* v. *Compagnie Generale Transatlantique*, 242 N. Y. 381) does not cover a personal judgment when the court rendering it was without jurisdiction over the defendant. (*Buchanan* v. *Rucker*, 9 East, 192; *Borden* v. *Fitch*, 15 Johns. 121; *McKinney* v. *Collins*, 88 N. Y. 216; *Baker* v. *Baker, Eccles & Co.*, 242 U. S. 394.) While it does not here appear that the defendant was at any time present within the Dominion of Canada, the fair inference from the face of the plaintiff's pleading is that the defendant did put in motion transactions in the territory of that Dominion which, at least indirectly, resulted in the creation of obligations to its citizens. The right now evidenced by this judgment is founded upon those transactions. Whether, in the cir-

cumstances, the Canadian government could by such a law empower its courts to exercise over the defendant in his absence a jurisdiction which we would recognize, is a question thus suggested. The validity of such a foundation for judicial power has been intimated. (Goodrich on Conflict of Laws, pp. 142–146.) That view, however, has been broadly discountenanced in this State in the few instances in which it has been presented on similar facts. (Cf. *Bank of China, etc.,* v. *Morse,* 168 N. Y. 458, 469; *Anderson* v. *Haddon,* 33 Hun, 435.) We indicate the problem, without undertaking an answer, because the decision of the present case, we hold, is controlled by collateral consequences that would follow enforcement in our courts of this judgment.

Were the judgment that of a sister State, it could not have the persuasiveness now sought to be attributed to it. In that case, the adjudication would be conclusive in respect of the fact and amount of the corporate indebtedness determined by it, but would not operate to deprive the defendant of his right to litigate, in accordance with the requirements of due process, the fact of his status as stockholder and defenses personal to him. (*Wilson* v. *Seligman,* 144 U. S. 41; *Selig* v. *Hamilton,* 234 U. S. 652; *Converse* v. *Stewart,* 192 N. Y. 578; writ of error denied, 218 U. S. 666; *Shipman* v. *Treadwell,* 208 N. Y. 404, 410.) (Cf. *Howarth* v. *Angle,* 162 N. Y. 179.)

The theory of these cases is that the non-resident stockholder impliedly agrees that the corporation shall represent him within the limits stated. *Marin* v. *Augedahl* (247 U. S. 142) was an action in North Dakota by a receiver of an insolvent Minnesota corporation to enforce against one of its stockholders an order of a Minnesota court laying an assessment on the stockholders generally. The court said (pp. 150, 151): "Whether the stockholder against whom the order is here sought to be enforced was personally a party to the suit in which it was made does not appear; nor is it material. Under the rule in

Minnesota, as also the general rule, he was sufficiently represented by the corporation to be bound by the order in so far as it determined the character and insolvency of the corporation and other matters affecting the propriety of a general assessment such as was made. * * * The Minnesota court * * * had jurisdiction of the subject-matter. * * * The corporation was before it in virtue of process duly served, and the stockholders, as has been said, were represented by the corporation. Thus there was jurisdiction of the person."

It may be admitted that the authorities cited do not necessarily exclude the possibility of supporting a wider jurisdiction *in personam* upon consent implied from the fact of an act or event caused in the foreign State by a non-resident defendant. There is nothing in the trend of later authority to indicate the acceptance of such a basis to judicial action, except as it is justified by some element of police power. ( *Kane* v. *New Jersey*, 242 U. S. 160; *Hess* v. *Pawloski*, 274 U. S. 352. Cf. *Flexner* v. *Farson*, 248 U. S. 289. See, Scott, Jurisdiction over Non-resident Motorists, 39 Harv. L. Rev. 563.) Even then it has been said: " Notice sent outside the State to a non-resident is unavailing to give jurisdiction in an action against him personally for money recovery. ( *Pennoyer* v. *Neff*, 95 U. S. 714.) There must be actual service within the State of notice upon him or upon some one authorized to accept service for him. ( *Goldey* v. *Morning News*, 156 U. S. 518.)" ( *Hess* v. *Pawloski, supra,* 355.)

It is clear, therefore, that the doors of our courts would not be open to a party seeking full force and effect for a decree of one of our sister States rendered as was this judgment. The policy of extending hospitality to a suitor upon the decree of a foreign country may be regulated in accordance with our settled concepts and traditions of what is wise and expedient. ( *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478.) " It seems to us unreasonable that we should give greater respect to judgments recovered in

a foreign country than to a judgment recovered in one of our sister States." (*Grubel* v. *Nassauer*, 210 N. Y. 149, 152.)

For this reason, the orders should be reversed, with costs in all courts, and the motion of the defendant to dismiss the first cause of action granted. The question certified should be answered in the negative.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Ordered accordingly.