Alex CHERUN, Plaintiff,

v.

Bernard Lyon FRISHMAN, Defendant.

Civ. A. No. 1719–64.

United States District Court
District of Columbia.

Dec. 11, 1964.

J. E. Bindeman, Leonard W. Burka, Washington, D. C., for plaintiff.

Karl G. Feissner, Washington, D. C., for defendant.

TAMM, District Judge.

This case is before the Court on cross motions by both the plaintiff and the defendant for summary judgment.

The plaintiff, Alex Cherun, has brought this action upon a judgment which he recovered against the defendant, Bernard Lyon Frishman, in the amount of $73,-353.26 on January 14, 1964, in the Supreme Court of Ontario, Dominion of Canada.

The defendant first denies that the judgment was an *in personam* money judgment against him, and second, he asserts that if the judgment be considered as *in personam* the Supreme Court of Ontario lacked personal jurisdiction over the defendant to grant such a judgment. .

There appears to be no genuine issue of material fact in this case, and, therefore, the Court must decide the several issues of law presented by the established facts in order to dispose of the parties' respective motions.

The undisputed facts upon which these questions arise are as follows. On December 7, 1961, the plaintiff Cherun, a resident and citizen of Ottawa, Ontario, Canada, as mortgagee, and the defendant Frishman, a United States citizen residing in the District of Columbia, as mortgagor, executed in the District of Columbia an indenture of mortgage whereby in consideration of plaintiff's paying to defendant the sum of $100,-000.00 the defendant granted and mortgaged unto plaintiff a certain tract of land in Ottawa known as Lots 31 and 32 on the North side of Stewart Street. The mortgage was registered in the Registry Office for the Registry Division of the City of Ottawa on December 13, 1961 as Number 436775. The mortgage obligated defendant to pay to plaintiff the sum of $100,000.00 in various installments, with the balance being due and payable on or before December 15, 1964. Defendant failed to make payments as provided in the mortgage agreement, and on December 11, 1963 plaintiff filed suit against Frishman in the Supreme Court of Ontario asking that the mortgage be enforced by foreclosure and, pursuant to a covenant in the mortgage, seeking to recover from the defendant the sum of $70,000.00, plus interest.

Pursuant to Section 25(1) (b) of the Consolidated Rules of Practice of Ontario, Frishman was served personally in the District of Columbia with a Writ and Notice of Writ fully apprising him of the Ontario proceedings and giving him an opportunity to contest them. However, the defendant failed to appear. Thereupon, the Supreme Court of Ontario entered a default judgment against the defendant, referred the matter to a local Master, and directed that Frishman pay to the plaintiff such sum as the Master should find due the plaintiff "for principal money, interest and costs at the date of the said [Master's] Report." The Court further directed that upon payment of the amount due the plaintiff, the plaintiff should assign and convey the mortgaged premises to the defendant.

In accordance with such direction, the local Master took testimony and filed his Report. He found that notice had been duly served upon the defendant according to the practice of the Court. The Master concluded:

"There is due to the said Plaintiff at the date of this Report for principal, interest and costs the sum of $73,-353.26."

Defendant failed and refused to pay the Ontario judgment, and plaintiff brought this suit thereon for a judgment against the defendant in the sum of $73,353.26, plus interest at the rate of 12% per annum, from January 14, 1964 until the date of judgment herein and thereafter at the rate of 6% per annum, plus costs.

The first question which these facts present is whether, and under what conditions, the courts of the United States will recognize and give effect to the judgments of the courts of foreign countries against United States citizens, and in particular to the judgments of the courts of Canada.

In Hilton v. Guyot, 159 U.S. 113, at 205–206, 16 S.Ct. 139, at 159–160, 40 L. Ed. 95, the Supreme Court answered this question in the following broad statement:

"When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."

That case involved a suit on a French judgment, and the Supreme Court held that since France would not give conclusive effect to the judgment of the United States and other foreign countries but would inquire into the merits behind the judgment, then for want of reciprocity and based on principles of international law and comity, the courts of the United States need not give conclusive effect to the judgments of the courts of France.

On the same day of its decision in Hilton v. Guyot, the Supreme Court decided a similar case arising out of an Ontario, Canada suit. In Ritchie v. McMullen, 159 U.S. 235, 242, 16 S.Ct. 171, 174, 40 L.Ed. 133, the Court found that under "the law of England, prevailing in Canada, a judgment rendered by an American court under like circumstances would be allowed full and conclusive effect," and therefore courts of the United States should give the same effect to Canadian judgments provided, of course, that the other conditions set forth in Hilton v. Guyot are met.

The only condition which has been questioned in this case is whether the Ontario court had personal jurisdiction over the defendant to render a judgment *in personam* against him. The Court must presume, therefore, that the other conditions, such as notice and opportunity to be heard, were satisfied, as indeed it appears to be so. However, before deciding the ultimate issue of whether the Ontario court operated within the proper sphere of judicial power, several preliminary questions must be answered.

The first question is whether the Ontario judgment was intended to be *in personam* against the defendant Frishman. If it were intended only to be *in rem,* it would affect only the land within Ontario, and personal jurisdiction over the defendant would not be necessary. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L. Ed. 565. Moreover, the plaintiff would have no personal money judgment against the defendant to enforce outside of Ontario. To answer this question, the Court must construe the Ontario judgment and the Master's Report incorporated therein.

The Supreme Court of Ontario ordered and adjudged in pertinent part as follows:

"AND IT IS FURTHER ORDERED AND ADJUDGED that the Defendant Bernard Lyon Frishman do

forthwith after the making of the Local Master's Report *pay* to the Plaintiff what shall be found due him *for principal money, interest and costs at the date of the said Report* * * * " (Emphasis added)

Standing alone, the judgment obviously purports to be a personal one against the defendant Frishman ordering him to pay to the plaintiff a certain sum of money to be determined by the Local Master.

The Master subsequently filed his report and found, *inter alia:*

"There is due to the said Plaintiff *at the date of this Report for principal, interest and costs* the sum of $73,-353.26." (Emphasis added.)

■ This appears to be in direct compliance with the order of the Court as to both the elements of the damages and the time of assessment. Therefore, the only reasonable conclusion is that the judgment and the report, taken together, intended that the plaintiff should recover from the defendant Frishman the sum of $73,353.26 for principal, interest and costs.

Defendant asserts that the only personal judgment was against another defendant, Dependable Finance Corporation, which owned mortgages subsequent to that owned by the plaintiff. It is clear, however, that the Master's finding with respect to the sum due the plaintiff from Dependable was a separate and independent finding from the liability of Frishman and was for the purpose of giving Dependable notice of the suit and an opportunity to redeem the mortgaged premises. It should be noted that the sum of $77,754.46 directed by the Master to be paid by Dependable to the plaintiff included an additional sum of $4,401.20 interest up to a date *after* the date of the Report and that the total was to be paid to the joint credit of the plaintiff and the Accountant of the Supreme Court of Ontario on that later date. It would be unreasonable to hold that this separate and independent finding of the Master in any way altered the Ontario court's express judgment that Frishman pay the plaintiff a sum of money, particularly in view of the specific finding of the Master in exact conformance with the order of the Court.

Next, this Court must decide whether under the circumstances of this case the local law of Ontario authorized the Ontario court to take personal jurisdiction over the defendant Frishman by way of substituted service outside of Ontario. Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278.

Rule 25(1) (b) of the Consolidated Rules of Practice of Ontario provides:

"25—(1) Service out of Ontario of a writ of summons or notice of writ may be allowed,

\*     \*     \*     \*     \*     \*

"(b) *where any* act, deed, will, *contract*, obligation or liability *affecting land* or hereditaments, *situate within Ontario, is sought to be* construed, rectified, set aside or *enforced."* (Emphasis added.)

■ The Ontario suit brought by the plaintiff to enforce his mortgage-loan on defendant's property in Ottawa, Ontario falls within the terms of the above rule, and that rule is considered by the courts of Ontario as sufficient basis for obtaining personal jurisdiction over an absent defendant whose conduct within Ontario satisfies the rule's jurisdictional requirements. McMahon v. Waskochil, [1945] Ont.Weekly N. 887.

The above problems having been reached and overcome without disposing of the case, the Court must now consider whether this assumption of personal jurisdiction by the courts of Ontario, Canada is a proper exercise of judicial power. Before it can do this, however, the Court must face the problem of whether the law of the United States or of Canada should govern the decision of this ultimate issue in the case.

In both Hilton v. Guyot, supra, and Ritchie v. McMullen, supra, the jurisdiction question was resolved on the ground that the defendants had submitted to the jurisdiction of the foreign courts by voluntarily appearing in their respective

cases through their attorneys. By way of dictum in the Hilton case, and with a quote from Story's Conflict of Laws, § 28, the Supreme Court does indicate that the law of the country in which the judgment is sought to be enforced should be applied. 159 U.S. at 164–165, 16 S.Ct. 139. Other than this reference, the Supreme Court has not specifically decided this question, and it remains largely an open one in this country. This Court is not, however, without some precedent to guide its resolution of the problem.

A leading English case on this point, Schibsby v. Westenholz, L.R. 6 Q.B. 155, involving an action in England on a default judgment of a French tribunal against British residents, held that English law should decide whether the French court had jurisdiction over the defendant. The Queen's Bench used the following example to illustrate the choice of its own law:

> "Should a foreigner be sued [in England while absent] under the provisions of the [British] statute referred to, and then come to the courts of this country and desire to be discharged, the only question which our courts could entertain would be whether the Acts of the British legislature, rightly construed, gave us jurisdiction over this foreigner, for we must obey them. But if, judgment being given against him in our courts, an action were brought upon it in the courts of the United States (where the law as to the enforcing foreign judgments is the same as our own) a further question would be open, viz, not only whether the British legislature had given the English courts jurisdiction over the defendant, but *whether he was under any obligation which the American courts could recognize to submit to the jurisdiction thus created.* L.R. 6 Q.B. at 159–60." Emphasis added.)

American writers agree that our own courts "require for recognition of the legal effect of foreign judicial proceedings that the foreign courts have jurisdiction, not as measured by the standards abroad but as measured by their own conception of what falls within the scope of permissible exercise of judicial power." Stumberg, Conflicts of Law 66–67 (3d ed.); Reese, The Status in This Country of Judgments Rendered Abroad, 50 Colum. L.Rev. 783, 789; 3 Freeman on Judgments, § 1484.

In addition, several courts in this country have held that the jurisdiction of a foreign country to render a judgment against United States citizens and corporations must be determined under the same standards applied to a judgment of one state in this country sought to be enforced in another. Compagnie Du Port De Rio De Janeiro v. Mead Morrison Mfg. Co., 19 F.2d 163 (S.D.Me.); Pope v. Heckscher, 266 N.Y. 114, 194 N.E. 53, 97 A.L.R. 687; Ryder v. Ryder, 2 Cal.App. 2d 426, 37 P.2d 1069.

■ Therefore, this Court feels that in the interest of affording United States citizens a reasonable degree of certainty as to when our own Courts will, under principles of comity, enforce a judgment rendered against such citizens in foreign countries, the issue of whether the foreign country had jurisdiction over the United States national should be determined by our own standards of judicial power as promulgated by the Supreme Court under the due process clause of the Fourteenth Amendment.

Proceeding to the final question in the present case of whether the Ontario court had jurisdiction over the defendant Frishman to permit it to grant an *in personam* money judgment against him in favor of the plaintiff, it is noted that the defendant relies on the early case of Pennoyer v. Neff, 95 U.S. 714, decided in 1877, which held that a non-resident of a state must either have been served personally within the jurisdiction or have consented in advance to the mode of service before a state will acquire personal jurisdiction over him, in the absence of his voluntary appearance in the litigation. 95 U.S. at 733.

Even under this narrow standard, it is pointed out that the mortgage contract in

the present case contains a covenant by which the defendant, as mortgagor, assented to service by the mortgagee in the manner actually carried out in the Ontario proceeding in the event of his default under the terms of the mortgage-loan agreement.[1] Thus, it could very well be said that the defendant submitted in advance to the jurisdiction of the Ontario court, where suit was clearly contemplated, and his failure to appear entitled the plaintiff to a default judgment.

However, the United States concept of *in personam* jurisdiction is no longer as limited as the defendant now argues. In 1945, the Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, established what is today the basic theory of jurisdiction over non-residents, namely, the "minimum contacts" doctrine. The Court stated that:

> " * * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316, 66 S.Ct. at 158.

Mr. Justice Stone, in this opinion, explained that the boundary line which the Court sought to establish should not depend on criteria which were "simply mechanical or quantitative" but "must depend rather upon the quality and nature of the activity" performed by the nonresident within the forum state to determine whether he has sufficient "contacts, ties, or relations." Id. at 319, 66 S.Ct. at 160.

The policy behind the minimum contacts test was carefully stated by the Court as follows:

> "But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." Ibid.

It is clear that this reasoning applies equally as well to the conduct of an individual within the forum state.

In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the Court applied the minimum contacts doctrine to the performance of a single act or transaction within the state in which suit was brought. The Court upheld a California statute which permits its residents to sue nonresident insurance companies in California courts on policies solicited by mail from outside the state.

1. The mortgage-loan agreement contains the following covenant:

"When any notice is given by the Mortgagee under any power herein, whether such notice is expressed, implied, permitted, or required under any statute, such notice may be given by leaving it with a grown-up person on the said lands if occupied, or by placing it on some portion of the said lands if unoccupied, *or at the option of the Mortgagee, by mailing it in a registered letter addressed to the Mortgagor at*

    *their last known address*

*,* or by publishing it twice in some newspaper published in the city, town or county in which the said lands are sit-

uated; and such notice shall be sufficient although not addressed to any person by name or designation, and notwithstanding that any person to be affected thereby may be unborn, unknown, unascertained, or under disability; *and the giving of the said notice in the manner aforesaid shall be effectual as if it had been personally served upon all persons required to be served therewith."* (Emphasis added.)

The phrase, "their last known address," appears to have been added to the form by the parties, indicating that they were well aware of the presence of this covenant in the agreement.

298

Mr. Justice Black held in McGee:

" * * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. * * * It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. * * *" 355 U.S. at 223, 78 S.Ct. at 201.

Later in the same term, the Supreme Court qualified the McGee case with its decision in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. By distinguishing McGee on two bases, the Court, in effect prescribed the prerequisites for finding personal jurisdiction predicated on the performance of a single act within a state. First, the Court pointed out that the cause of action in the McGee case arose out of "an act done or transaction consummated in the forum State." Moreover, it was based on a contract which had a "substantial connection" with that state. 357 U.S. at 251–252, 78 S.Ct. at 1238. Second, in McGee the Court noted that California had a specific statute to exercise what McGee called its "manifest interest" in providing an effective remedy for its citizens who had suffered damage as a result of the activity engaged in by the nonresident within the state. Id. at 252, 78 S.Ct. 1228.

Though it is true that these cases are concerned with the permissible limits of jurisdiction of a state of the United States over a nonresident defendant under the Due Process clause of the Fourteenth Amendment, this Court feels that the principles established by these cases apply equally as well to the question of jurisdiction in its present international context, just as our own standards for recognizing judgments of one state sued upon in another under the Full Faith and Credit clause are applied on the basis of comity to judgments of foreign countries. Cf. Hilton v. Guyot, supra.

Applying these standards to the jurisdictional facts of the instant case, it is apparent that the defendant Frishman had substantial contacts with the Canadian Province of Ontario, the forum state for purposes of this discussion. Frishman owned land situated in Ottawa, Ontario. He entered into a mortgage-loan agreement with the plaintiff, a citizen and resident of Ottawa, Ontario, for the sizeable amount of $100,000, with the mortgage on his Ontario property being the consideration for the loan. Notwithstanding the fact that the agreement was executed in the District of Columbia, it was drawn on a form prescribed by the Ontario Mortgages Act, and the mortgage was registered in Ottawa, Ontario. Obviously, the defendant and the contract both have a "substantial connection" with Ontario. Furthermore, the cause of action arose out of the breach of this mortgage-loan agreement, which clearly affected the land situated in Ontario, and the Rules of Practice of Ontario specifically permit service out of Ontario where such a contract is sought to be enforced.

Defendant has taken advantage of his ownership of property in Ontario, Canada to secure a substantial interest of his own. He should not now be allowed to avoid the consequences of his failure to live up to that agreement solely on the ground that he was not physically present in Ontario when suit was brought therein. International Shoe Co. v. State of Washington, 326 U.S. at 319, 66 S.Ct. 164. Ontario has a very definite and substantial interest in providing its citizens with an effective remedy in situations such as this, and its expression of that interest under the present facts cannot be said to be undue. Cf. McGee v. International Life Ins. Co., 355 U.S. at 223, 78 S.Ct. 199; Hanson v. Denckla, 357 U.S. at 252, 78 S.Ct. 1228.

Therefore, all the requirements for *in personam* jurisdiction under United States concepts of due process are present in this case, and the assumption of such jurisdiction over the defendant by the Supreme Court of Ontario would not, in the opinion of this Court, offend "traditional notions of fair play and substantial justice."

Thus, all of the conditions under which United States courts may give full credit and effect to the judgments of the courts of foreign countries have been satisfied, and this Court will enforce the Ontario, Canada judgment sued upon by the plaintiff herein.

Counsel will present an appropriate order to carry out the provisions of this memorandum opinion.