**Albert LOGIURATO, Plaintiff,**

v.

**ACTION et al., Defendants.**

**Civ. A. No. 78–518.**

United States District Court,
District of Columbia.

Feb. 27, 1980.
As Amended April 29, 1980.

Robert Levy, New York Civil Liberties Union, New York, New York, and Robert Plotkin, Mental Health Law Project, Washington, D. C., for plaintiff.

William H. Briggs, Asst. U. S. Atty., U. S. District Court, Washington, D. C., Patrick J. Attridge, Rockville, Md., Hogan & Hartson, Francis L. Casey, Jr., Carol A. Mutter, Washington, D. C., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court are Motions for Partial Summary Judgment and Summary Judgment in an action brought by Albert Logiurato against ACTION, *et al.* Plaintiff alleges that Defendants have deprived him of his First, Fifth, and Eighth Amendment rights by drugging, repatriating, and hospitalizing him against his will. Subject matter jurisdiction is initially based on 28 U.S.C. § 1331. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). The status of the parties may be summarized as follows:

Plaintiff is an individual who served as a Peace Corps trainee in Costa Rica from January 1975 until March 24, 1975. Defendant ACTION is the umbrella agency managing the Peace Corps. Defendant Brown is the Director of ACTION. Defendant Payton is Director of the Peace Corps. Plaintiff is suing Brown and Payton in their official capacities, seeking expungement of Peace Corps records and declaratory relief. The above mentioned Defendants shall hereinafter be referred to as ACTION.

Defendant Pardo was the Peace Corps Medical Officer in Costa Rica in 1975. He was responsible for providing usual medical services to all Peace Corps trainees and volunteers in Costa Rica, and his services were expected to require thirty (30) hours of work per week. Dr. Pardo is not a psychiatrist, and was and is a Costa Rican citizen.

Defendant Hoffmaister is a Costa Rican psychiatrist who occasionally handled referrals of Peace Corps trainees and volunteers from Dr. Pardo. Defendant Stoll was the Director of Bastico in 1975. Bastico is a private corporation that trains Peace Corps volunteers. Defendant Stoll is an American, and currently resides in California.

Defendant Lebensohn is a psychiatrist practicing in the District of Columbia. He is not a consultant to the Peace Corps, but accepts referrals from the Peace Corps when his practice permits. Dr. Lebensohn is on the staff of Defendant Sibley Memorial Hospital (Sibley), a private hospital located in the District of Columbia. Defendant Windsor was the Administrator of Sibley in 1975, and currently resides in South Carolina.

The facts, for the purposes of the pending Motions, are straightforward. Plaintiff be-

gan serving as a Peace Corps trainee in January 1975. Soon after his arrival in Costa Rica, Plaintiff became embroiled in a dispute with Bastico regarding the Peace Corps training process. During the same period, the Peace Corps received complaints from the Costa Rican family providing room and board to Plaintiff. Quickly, Peace Corps and Bastico officials concluded that Plaintiff's attitude and behavior indicated that he was not suited for the Peace Corps. In mid-March of 1975 he was asked to resign and he did so shortly thereafter. At the time Logiurato tendered his resignation, he was offered a free medical checkup. Plaintiff accepted the offer, and on or about March 18, 1975, he was examined by Dr. Pardo. Pardo found Plaintiff's behavior to be extremely bizarre, and conjectured that Plaintiff might be psychotic. He asked Logiurato to return for further evaluation. On or about March 20 Logiurato was examined by Dr. Hoffmaister. When Plaintiff realized that he was undergoing a psychiatric examination, he bolted from Dr. Hoffmaister's office. Defendant Stoll, among others, gave chase and apprehended Plaintiff. Dr. Pardo, against Logiurato's wishes, administered thorazine, a powerful sedative. Plaintiff was kept in a hospital in Costa Rica under heavy sedation for two days, and was then sent to the District of Columbia for further evaluation. The decision to repatriate Logiurato was made by Dr. Pardo and Peace Corps officials in Washington. This decision was based in part on Dr. Hoffmaister's conclusion that Logiurato might possibly be a danger to himself or others.

On or about March 22, 1975, Plaintiff, still under heavy sedation, was brought by Defendants Stoll and Pardo to Washington. The Peace Corps had arranged for examination of Plaintiff by Dr. Lebensohn, and Plaintiff was admitted to Sibley on or about March 22. Dr. Lebensohn thoroughly examined Logiurato, and he was released on March 24, 1975. Dr. Lebensohn found that Plaintiff was suffering from a mental disor-

der, but concluded that he was neither psychotic nor a danger to himself or others. Plaintiff's resignation was accepted by the Peace Corps on March 24, 1975.

Plaintiff contends that the undisputed facts indicate that his First, Fifth, and Eighth Amendment rights were violated as a matter of law. Defendants vigorously contest this allegation and contend that (1) this Court lacks *in personam* jurisdiction over Defendants Pardo, Hoffmaister, and Stoll, (2) the statute of limitations has expired against all Defendants, (3) with the exception of ACTION, there was insufficient "state action" to support a finding that a constitutional tort was committed, (4) qualified immunity protects Defendants from suit in this case, (5) there has been no showing that Plaintiff's First, Fifth, or Eighth Amendment rights were violated, and (6) Plaintiff is not entitled to any remedy he seeks.

## I. *In Personam* Jurisdiction

Defendants Pardo, Stoll and Hoffmaister allege that this Court lacks *in personam* jurisdiction over them because the District of Columbia does not have the minimum contacts required by *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) and its progeny. Discussion of personal jurisdiction involves two basic queries, to wit: (1) does the Constitution grant the state the power (i. e. the jurisdiction [1]) to affect legal interests through the judicial process, and (2) has the state given the Courts that requisite authority (i. e. the competence [2]) to exercise this power.

The instant case involves an allegedly ongoing constitutional tort; thus, unlike *International Shoe* and its progeny, state law is not in issue. Rather, the jurisdictional dispute hinges upon the power of a federal court to redress federal constitutional rights. This power is not limited by state boundaries. As the Court of Appeals stated in *Briggs v. Goodwin*, 569 F.2d 1, 9 (D.C.Cir.

---

1. *Davis v. Passman, supra*, note 18.

2. *See Rosenberg, et al., Elements of Civil Procedure*, third edition, at 207.

1977), *rev'd on other grounds sub nom. Stafford v. Briggs*, —— U.S. ——, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).

Whether or not Article III mandated the creation of any inferior federal courts at all, it is a matter of general agreement that the discretion of Congress "as to the number, the character, [and] the territorial limits" of the inferior federal courts is not limited by the Constitution. Congress might have established only one such court, or a mere handful . . .

 Thus, federal courts have the jurisdiction to hear federal questions regardless of the territory where the federal question arose. Jurisdiction is, of course, limited by the due process clause of the Fifth Amendment. Due process requires "notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Defendants have received notice of the instant case[3] and are represented by the Justice Department.

 The due process clause also requires that some nexus exist between the state and the individual being sued.[4] In the instant case, the issue is whether the Costa Rican defendants had sufficient contacts with the United States to make the exercise of jurisdiction reasonable.[5] Jurisdiction over Defendant Pardo is easily obtained; he performed an allegedly tortious act in the United States. Jurisdiction over Defendant Hoffmaister is more troublesome—he is a Costa Rican, minimally connected with the United States, who committed an allegedly tortious act in Costa Rica. It is evident, however, that Hoffmaister knew or should have known the effects his actions would have on Plaintiff in the United States. His recommendation that Plaintiff be repatriated and hospitalized, plus the receipt of compensation from the Peace Corps for his examination of Plaintiff provides the United States with sufficient contacts to exercise jurisdiction over him.

 Competence is the authority of the Court to exercise its jurisdiction. This authority must be delegated by Congress. As the Supreme Court stated in *Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 1119 (1925), "Congress clearly has the power to authorize a suit under a federal law to be brought in any inferior court. Congress has the power, likewise, to provide that the process of every district court shall run into every part of the United States." *In personam* competence is thus obtained when defendants have been properly served pursuant to Congressional direction.[6]

The Federal Rules of Civil Procedure provide for proper service, and thus delineate the parameters of this Court's competence. Defendants ACTION, Lebensohn, and Sibley were properly served in the District of Columbia, pursuant to Rules 4(d)(1), (3), (4) and (5). This Court is thus competent to adjudicate claims against them.

Defendants Pardo and Hoffmaister were served in Costa Rica. Defendants Windsor and Stoll were served in the United States outside the District of Columbia. The Court must therefore look to Rule 4(d)(7) to determine its competence over those defendants. That Rule provides that service is proper if made (1) as provided by the Federal Rules, (2) pursuant to a Federal statute, or (3) pursuant to a statute enacted by the state in which the federal court resides. *See Coleman v. American Export Isbrandtsen, Inc.*, 405 F.2d 250 (2d Cir. 1968). Rule 4(f) provides that proper service cannot be made outside the state where

---

**3.** Notice was effected pursuant to the Federal Rules of Civil Procedure. The parties do not contend that such notice was constitutionally deficient. *See Wuchter v. Pizzutti*, 276 U.S. 13, 18, 48 S.Ct. 259, 260, 72 L.Ed. 446 (1928).

**4.** *See International Shoe, supra*, at 316. This "minimum contacts" requirement applies in the international setting. *See Cherun v. Frishman*, 236 F.Supp. 292, 296–98 (D.D.C.1964).

**5.** *See Stafford v. Briggs, supra*, —— U.S. at ——, 100 S.Ct. 774 (Stewart, J., dissenting).

**6.** *See Wuchter v. Pizzutti, supra.*

the district court resides unless service is also authorized by a Federal or state statute. *See Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir. 1973); *Wu v. Keeney*, 384 F.Supp. 1161 (D.D.C.1974); *Navarro v. Sedco*, 449 F.Supp. 1355 (S.D.Tex.1978). Thus, this Court must look to Federal and District of Columbia law to determine its competence.

Plaintiff alleges that competence may be obtained by this Court pursuant to 28 U.S.C. § 1391(e). He contends that (1) all Defendants were engaged in state action, and were thus "officials" pursuant to § 1391(e), (2) § 1391(e) relates to suits against federal officials in both their individual and official capacities, and (3) although § 1391(e) is a venue statute, it also provides a basis for competence.

■ Although venue statutes generally do not provide a basis for competence, *Arrowsmith v. UPI*, 320 F.2d 219 (2d Cir. 1963), § 1391(e) is an exception. Unlike other venue statutes, it provides for extraterritorial service of process. Contrary to Plaintiff's assertions, however, § 1391(e) provides for competence only in suits requesting writs of mandamus against federal officials. It does not authorize the courts to entertain suits for money damages against officials in their individual capacity. *See Stafford v. Briggs, supra,* —— U.S. at ——, 100 S.Ct. 774.

■ Competence over Defendants may be derived from the District of Columbia's long arm statute, 13 D.C.Code § 423. Section 423(a)(3) gives courts competence over the person if he or she causes "tortious injury in the District of Columbia by an act or omission in the District of Columbia." It is undisputed that Defendants Pardo and Stoll brought Plaintiff into the District against his will. It is further uncontested that Logiurato was involuntarily admitted to Sibley during Windsor's tenure as administrator. These allegations provide a sufficient basis for this court's exercise of competence over Pardo, Stoll and Windsor.

Section 423(a)(1) provides for competence over the person if the individual transacted

any business in the District. Section 423(b) limits the authorization to claims arising out of that transaction. The Peace Corps authorized the psychiatric evaluation of Plaintiff by Hoffmaister, and subsequently reimbursed him for his efforts. The ultimate authorization and reimbursement was performed in Washington. Whether this amounts to a transaction of business in the District, and if so, whether the constitutional tort arose out of this transaction need not be decided, because Hoffmaister is immune from suit.[7]

## II. Statute of Limitations

This suit was filed on March 23, 1978; thus, the applicable statute of limitations must be measured against that date. Two issues are presented in this section, to wit: (1) what is the applicable statute of limitations, and (2) when did that statute begin to run.

■ When there is no federal statute of limitations governing litigation involving federal questions, the Court must look to the "analogous" state statute of limitations. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Defendants contend that Plaintiff's allegations are analogous to the common law torts of assault, false arrest, and false imprisonment, and that their one year statute of limitations is applicable. *Alkana v. District of Columbia*, No. 77–1035 (D.D.C.1978); *Horman v. Kissinger*, No. 77–1748 (D.D.C.1978). It is clear, however, that "interests respectively protected by federal constitutional law and local assault law are not congruent, and that injuries inflicted by officers acting under color of [legal authority] are significantly different in kind from those resulting from acts of private persons." *Payne v. District of Columbia*, 559 F.2d 809, 817 n. 32 (D.C.Cir. 1977). 12 D.C.Code § 301(8) provides that suits must be brought within three years from the time the cause of action accrues if there is no other limiting statute on point. It is this general statute of limitations that

---

7. *See* Section IV, *infra.*

applies to constitutional torts. *See Beard v. Robinson*, 563 F.2d 331 (7th Cir. 1977); *Regan v. Sullivan*, 577 F.2d 300 (2d Cir. 1977).

Defendants Pardo, Stoll, and Hoffmaister allege that their activities ceased on or before March 22, 1975. They therefore conclude that the three year statute of limitations has expired against them. This contention is erroneous. 12 D.C.Code § 301(8) indicates that it is the time the cause of action *accrues*, not the time a cause of action arises, that is dispositive. Since the instant litigation involves an allegedly ongoing tort, the cause of action does not accrue until the tortious activity has ceased. *See Fitzgerald v. Seamans*, 384 F.Supp. 688 (D.D.C.1974), *aff'd in part, remanded in part*, 553 F.2d 220 (D.C.Cir.1977). Thus, the statute of limitations is not a bar to this litigation.

### III. State Action

Plaintiff alleges that his First, Fifth, and Eighth Amendment rights were violated. For this claim to be actionable, however, Defendants behavior must have been clothed in state action. *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Greenya v. George Washington University*, 512 F.2d 556 (D.C.Cir.1975), *cert. denied*, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975). The test for state action was appropriately enunciated in *Jackson v. Metropolitan Edison Company, supra*, 419 U.S. at 351, 95 S.Ct. at 453. "The inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the [defendant] . . . so that the action of the latter may be fairly treated as that of the state itself."

Unlike most state action cases, this litigation does not involve pervasive state control over the defendant's activities. *See, e. g., Jackson v. Metropolitan Edison Co., supra*. Nor does it involve an interdependence between the State and the defendant's activities. *See, e. g., Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Rather, the issue is whether the activities giving rise to the alleged constitutional tort were conducted under color of legal authority, with the support and approval of the government. In such cases, state action may only be found if the defendant's activities were in some way controlled by the government. *Spark v. Catholic University*, 510 F.2d 1277, 1281–82 (D.C.Cir.1975).

It is evident that sufficient government control existed in the instant case to clothe Defendants in state action. The initial medical examination was conducted pursuant to Peace Corps regulations by the Peace Corps Medical Officer. The decision to conduct a psychiatric examination was made by that doctor after consultation with Peace Corps headquarters in Washington. The subsequent sedation, repatriation, and hospitalization of Plaintiff was performed pursuant to directives from the Peace Corps in Washington. All expenses incurred due to the alleged tortious conduct were paid for by the Peace Corps, admittedly a governmental agency. Defendants' allegedly tortious conduct, thus sanctioned by the Peace Corps, constituted state action.

### IV. Qualified Immunity

Liability attaches to the Defendants in the instant case because of the nexus between Defendants' actions and government control. The existence of that nexus, however, also provides the Defendants with a qualified immunity from suit. As the Supreme Court stated in *Butz v. Economou*, 438 U.S. 478, 497–498, 98 S.Ct. 2894, 2906, 57 L.Ed.2d 895 "It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords a basis for qualified immunity . . ."

The Supreme Court in *Economou* also outlined the responsibility of the district courts when immunity is in issue, stating "[D]amage suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity . . . In respond-

ing to such a motion, Plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits." *Id.*, at 508, 98 S.Ct. at 2911.

■ The facts before the Court are not in serious dispute. Defendant Hoffmaister was asked to perform a psychiatric evaluation of Plaintiff. He performed the evaluation, and indicated that Plaintiff might possibly be dangerous to himself or others. He was not involved in the sedation, repatriation, or hospitalization of Plaintiff. He neither made the decision to perform nor performed the alleged constitutional torts. His conclusion that Plaintiff might be dangerous was reasonable in light of Plaintiff's conduct during and after the psychiatric interview and good faith is apparent. His belief that his actions did not constitute a constitutional tort was reasonable. All claims against Defendant Hoffmaister must be dismissed.

■ Defendants Lebensohn, Sibley and Windsor are also immune from suit. Defendant Lebensohn was contacted by the Peace Corps, and asked to thoroughly evaluate Logiurato. Plaintiff arrived at the Sibley Memorial Hospital in the evening of March 21, 1975. Dr. Lebensohn examined him on the following day, but could not render conclusive findings because Plaintiff was still heavily sedated. On March 24, 1975, Dr. Lebensohn again examined Logiurato and, upon a finding that he was not a danger to himself or others, authorized his release. These Defendants did not participate in Plaintiff's sedation, and their acts were proper professional responses to his sedated condition. The Court does not analyze whether, under the circumstances, their conduct constitutes a constitutional tort, because it is clear that they all reasonably believed their actions were legal. All claims against Lebensohn, Sibley, and Windsor must be dismissed.

■ Defendants Pardo and Stoll do not meet the *Butz* standard for sovereign immunity. Whether the sedation, repatria-

tion, and hospitalization of Plaintiff was conducted in good faith and was based on a reasonable belief that their conduct was legal cannot be gleaned from the record before the Court. Unlike Defendants Hoffmaister, Lebensohn, Windsor and Sibley, Defendants Pardo and Stoll were directly responsible for the allegedly tortious conduct. Stoll apprehended Plaintiff and held him while Pardo administered the first dose of thorazine. Pardo decided that repatriation was proper, and both he and Stoll brought Plaintiff to the United States.

Defendants Pardo and Stoll allege that they are entitled to an immunity defense as a matter of law because (1) their actions were sanctioned by Peace Corps regulations, (2) it was not established as a matter of law at the time of the incident that their actions violated a constitutional right, and (3) there are no allegations of bad faith. The Court finds these contentions puzzling. The regulations permit the drugging of volunteers only if the volunteer is a "very disturbed psychotic." The evidence of record thus far indicates that Plaintiff did not fit that description. Moreover, it was established at the time of the incident in question that, even if a state is effectuating a legitimate state purpose, the actors must employ the least restrictive alternatives if an individual's fundamental personal liberties are at stake. *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Finally, the complaint and the undisputed facts of this case indicate that there is a genuine issue regarding the good faith of Defendants Pardo and Stoll. All surviving claims may be presented against these two Defendants.

## V. The Causes of Action

■ Defendants allege that Plaintiff has failed to state a cause of action, and that the facts, as asserted, do not indicate violations of the First, Fifth, and Eighth Amendments. Plaintiff's Eighth Amendment claim is frivolous. Since punishment, for Eighth Amendment purposes, relates only to criminals, *Ingraham v. Wright*, 430

U.S. 651, 666–667, 97 S.Ct. 1401, 1409–1410, 51 L.Ed.2d 711 (1978), and Plaintiff in no way fits that status, his Eighth Amendment claim must be dismissed.

■■■ Plaintiff has presented a valid Fifth Amendment claim. He has alleged that individuals acting under color of legal authority denied him due process of the law. It is clear that this provides a basis for a constitutional tort based on the Fifth Amendment. *See Davis v. Passman, supra.* Plaintiff's First Amendment claim is also viable. If Plaintiff proves that Defendants repatriated him to preclude criticism of the Peace Corps training process, they will have shown an actionable First Amendment violation. *Dellums v. Powell,* 566 F.2d 167 (D.C.Cir.1977). Defendants' Motion to Dismiss the First and Fifth Amendment claims must be denied.

VI. Remedies

■■■ Defendants finally claim that Plaintiff has no right to the remedies he seeks. This assertion is without merit. This Court may order the expungement of Peace Corps records if Plaintiff prevails on the merits. *See Chastain v. Kelly,* 510 F.2d 1232, 1236 (D.C.Cir.1975). Thus, he has a justiciable remedy against ACTION. Logiurato will also be entitled to damages from Pardo and Stoll if he prevails. *See Bivens v. Six Unknown Named Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman, supra.* Defendants' Motion on this issue must be denied.