Reverend Pierre BYNUM, Plaintiff,

v.

UNITED STATES CAPITOL POLICE BOARD and United States Capitol Police, Defendants.

No. CIV. A. 97–1337 9PLF.

United States District Court, District of Columbia.

March 31, 2000.

Order Amending Judgment May 11, 2000.

52

James Matthew Henderson, Sr., American Center for Law & Justice, Washington, DC, for plaintiff.

Paul Mussenden, U.S. Attorney's Office, Washington, DC, for defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment, and plaintiff's motion for summary judgment. Plaintiff, Reverend Pierre Bynum, alleges

that the United States Capitol Police prohibited him from praying in the United States Capitol in violation of the Free Speech and Free Exercise Clauses of the First Amendment, the Due Process Clause of the Fifth Amendment, and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb. Reverend Bynum seeks an injunction against further enforcement of the policy and practice of treating prayer as a form of prohibited demonstration in the Capitol. Upon consideration of the parties' cross motions for summary judgment, their supplemental memoranda, and the oral argument presented by counsel, the Court concludes that plaintiff's motion for summary judgment should be granted and defendants' motion to dismiss or for summary judgment should be denied.

## I. BACKGROUND

Each week, an estimated 500 private and guided group tours traverse the United States Capitol, reflecting on the historic significance of such areas as the Rotunda, the Washington cornerstone, Statuary Hall and the old Supreme Court chambers. Defendants' Statement of Material Facts About Which There is No Genuine Issue ("Defs.' Statement of Undisputed Facts") ¶ 2. In any given year, the United States Capitol welcomes over 1.5 million visitors.

Unlike the grounds surrounding the Capitol, which historically have been the site of numerous demonstrations, there has been a ban on demonstrations inside the Capitol since 1946 when Congress decreed: "It shall be unlawful for any person or group of persons willfully and knowingly— ... to parade, demonstrate, or picket within in any of the Capitol Buildings." 40 U.S.C. § 193f(b)(7). The United States Capitol Police are responsible for enforcing this ban. 40 U.S.C. § 212a. Believing that the Capitol Police needed guidance in determining what behavior constitutes a "demonstration," the United States Capitol Police Board issued a regulation that interprets "demonstration activity" to include:

> parading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of onlookers, but does not include merely wearing Tee shirts, buttons or other similar articles of apparel that convey a message.

Traffic Regulations for the Capitol Grounds § 158; *see* Declaration of Inspector Christopher M. McGaffin ("McGaffin Decl.") ¶ 3.[1] According to the government, the ban on demonstration activities includes prayer "unless it is conducted in the authorized use of the Chapel, or in a designated room upon invitation of a Member." Defs.' Statement of Undisputed Facts ¶ 8.[2]

On Sunday, November 3, 1996, plaintiff Reverend Pierre Bynum, the Associate Pastor of Waldorf Christian Assembly in Waldorf, Maryland, led a "prayer tour" of the United States Capitol for the group Capitol Hill Prayer Alert.[3] During the prayer tour, Reverend Bynum led a small group of people to various historic sites in the Capitol. Plaintiff's Statement of Mate-

---

1. The United States Capitol Police are charged with primary responsibility for policing the United States Capitol and its grounds and the House and Senate Office Buildings and grounds. The United States Capitol Police Board, consisting of the Architect of the Capitol and the Sergeants at Arms of the Senate and the House, directs and controls the activities of the Capitol Police. 40 U.S.C. §§ 212a, 212b (1994).

2. There is no support for this statement in any affidavit or declaration submitted by the government.

3. During the Fall of 1996, Capitol Hill Prayer Alert co-sponsored forty days of fasting and prayer leading up to the November 1996 general elections. According to plaintiff, the purpose of the prayer tour was "to communicate truthful, historically objective fact to tour participants, as well as to provide direction and guidance for tour participants in praying for the United States, its government, its leaders and its people." Plaintiff's Statement of Material Facts Not In Dispute ¶ 24.

rial Facts Not In Dispute ("Pl.'s Statement of Undisputed Facts") ¶¶ 1, 27, 29. While viewing the Washington cornerstone for two to three minutes, Reverend Bynum and his tour group "consider[ed] the historic interpretive aspects of the site ... [and] praye[d] and meditat[ed] on topics related to the historic interpretation offered by Reverend Bynum." Pl.'s Statement of Undisputed Facts ¶ 33. The few moments of prayers were in a quiet, conversational tone, during which the members of the group bowed their heads and folded their hands. Pl.'s Statement of Undisputed Facts ¶ 26; Transcript of September 16, 1997 Motions Hearing at 4. The tour group caught the attention of one Capitol Police officer who commented: "[N]ow that is a demonstration," or words to that effect. Pl.'s Statement of Undisputed Facts ¶ 34.

As the tour group arrived at Statuary Hall, another Capitol Police officer approached Reverend Bynum and, after determining that his group had been seen praying elsewhere in the building, told him that praying in the Capitol was illegal because the Capitol Police consider praying to be a form of prohibited demonstration. Pl.'s Statement of Undisputed Facts ¶¶ 38–42. After the officer told Reverend Bynum he would be arrested if the praying continued, Reverend Bynum and the tour group continued their prayer tour of the Capitol, but omitted the outward appearance of praying: they no longer folded their hands, closed their eyes or bowed their heads. *Id.* ¶¶ 43–46. While Reverend Bynum and his group were able to finish their tour, their perception was that they did so "under surveillance by United States Capitol Police officers." *Id.* ¶ 47.

After the November 3, 1996 incident, Reverend Bynum's legal counsel wrote to John T. Caulfield, General Counsel of the United States Capitol Police Board, regarding Reverend Bynum's experience. Plaintiff's Motion for Preliminary Injunction ("Pl.'s Mot. for Prelim. Injunction"), Exh. 1 (Declaration of Reverend Pierre

Bynum) ¶¶ 47–48. In response, Mr. Caulfield informed Reverend Bynum's counsel that certain changes regarding tours in the Capitol had been instituted in order to accommodate the significant crowds that visit the Capitol during peak season. Mr. Caulfield's letter also spoke to the regulation that led to the November 3 incident, suggesting that the Capitol Police believe that prayer is · prohibited in the Capitol:

> As you may be aware, demonstrations are prohibited in the U.S. Capitol and the Capitol buildings. Therefore, tours would be a permissible activity provided that they are not a demonstration that is conducted in such a manner as to have the purpose, propensity or effect of drawing a crowd of onlookers or involves expressive conduct that conveys a message supporting or opposing a point of view.

Pl.'s Mot. for Prelim. Injunction, Exh. 2 (May 2, 1997 letter from John T. Caulfied, United States Capitol Police, to James Matthew Henderson, Sr., American Center for Law and Justice). After receiving the letter from Mr. Caulfield, plaintiff filed this lawsuit.

## II. DISCUSSION

### A. *First Amendment Forum Analysis*

■ Plaintiff contends that the Capitol Police Board's regulation is an impermissible restriction on speech in a public place. Under *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), there is a three-step analysis required for resolving free speech claims on public property. First, the activity threatened or affected by governmental action must be identified, and it must be determined whether it is speech protected under the First Amendment. The parties agree that plaintiff's activity was protected speech under the First Amendment. Second, the court must "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic."

*Id.* The Supreme Court has recognized three different types of public property for free speech purposes: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum. *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45–46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Third, the court "must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. at 797, 105 S.Ct. 3439.

 The first type of forum, the traditional public forum, includes places such as public streets and parks, which "by long tradition or by government fiat have been devoted to assembly and debate." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 45, 103 S.Ct. 948. It includes those kinds of places which have historically "been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* Government regulation of speech in a traditional public forum is subject to the strictest scrutiny. "For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.*

 The second type of forum is the designated public forum, which consists of property not traditionally open to assembly and debate, but which the government has affirmatively designated "for use by the public as a place for expressive activity." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 45, 103 S.Ct. 948. So long as the government maintains the public designation of the forum, "it is bound by the same standards as apply in a traditional public forum." *Id.* at 46, 103 S.Ct. 948. "Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Id.*

 The final type of forum is the nonpublic forum, which includes all remaining public property. *See International Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678–79, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992). "In addition to time, place, or manner regulations, the state may reserve [a nonpublic forum] for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 47, 103 S.Ct. 948; *see International Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. at 679, 112 S.Ct. 2701; *Longo v. United States Postal Service,* 983 F.2d 9, 12 (2d Cir.1992). The regulation "need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation" on speech, nor must it be narrowly tailored to serve a compelling governmental interest. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. at 808–09, 105 S.Ct. 3439.

 As the seat of the legislative branch of the federal government, the inside of the Capitol might well be considered to be the heart of the nation's expressive activity and exchange of ideas. After all, every United States citizen has the right to petition his or her government, and the Houses of Congress are among the great democratic, deliberative bodies in the world. But it also has been recognized that the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents. To that end, Congress enacted the statute at issue here so that citizens would be "assured of the rights of freedom of expression and of assembly and the right to petition their Government," without extending to a mi-

nority " a license ... to delay, impede, or otherwise disrupt the orderly processes of the legislature which represents all Americans." H. REP. NO. 90–745 at 2, *reprinted in* 1967 U.S.C.C.A.N. 1739, 1740. The type of controls that Congress legitimately may use to regulate the manner in which ideas are expressed inside the Capitol therefore excludes its classification as a traditional public forum.

Nor does the Capitol seem to fit the classification of a designated public forum. Unlike those locations that have been found to be designated public fora because they are open to the public for meetings or other group-related expressive activity, the inside of the Capitol is not open to meetings by the public at large. *Cf. Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (university facilities made generally available for student group meetings were designated public fora). Of course, meetings do take place in the Capitol, but they are scheduled and controlled by Senators or Representatives, and they may or may not be open to observation or (less frequently) participation by the public. As Judge Mize has noted, by way of example, congressional committee hearing rooms are not "regularly designated or held open to the general public for engagement in town meeting-like assembly and debate." *Dubkin v. United States,* 119 Daily Wash. L. Rptr. 2213, 2218 (D.C.Sup. Ct.1991). "The normal purpose and function of the hearing room (the orderly and formal presentation of testimony in the form of debate and discussion by elected officials and authorized witnesses) suggests that this area is not a place, designated or otherwise, open to the public for limitless expressions." *Id.* The same is true of the Senate (and the House) gallery and floor. *See United States v. Carey,* Crim. No. M–9066–96, slip op. (D.C.Sup. Ct. Jan. 3, 1997), *affirmed sub nom Smith–Caronia v. United States,* 714 A.2d 764 (D.C.1998).

■ The fact that Congress allows the public to observe its proceedings and visit the inside of the Capitol does not make the Capitol a designated public form. The government has a legitimate interest in ensuring that the activities of Congress proceed without disruption, and Congress may enact reasonable statutes, and its agents may issue reasonable regulations, to further that interest. "The government does not create a public forum ... by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. at 802, 105 S.Ct. 3439. All indications are that Congress has not opened the Capitol as a public forum for free and open public discourse.

■ Which brings the Court to what may seem a somewhat surprising conclusion that the inside of the United States Capitol is a nonpublic forum for First Amendment forum analysis purposes. While in many respects the Capitol must be viewed as *sui generis,* it appears that its designation as a nonpublic forum most closely conforms with Congress' intent and the forum-based approach adopted by the Supreme Court. As a nonpublic forum, the government may restrict First Amendment activity in the Capitol so long as the restrictions are "viewpoint neutral" and "reasonable in light of the purpose served by the forum." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. at 806, 105 S.Ct. 3439; *see Longo v. United States Postal Service,* 983 F.2d at 12. The Court finds that Section 193f(b) enacted by Congress is a viewpoint neutral, reasonable regulation of both conduct and expressive activity that satisfies the Supreme Court's test for nonpublic fora.

■ The Capitol Police Board's regulation also is viewpoint neutral as written. Its ban on demonstration activity is without reference to the purpose or message of the activity and applies equally to all forms of demonstration or other expressive conduct "supporting or opposing a point of

view." Traffic Regulations for the Capitol Grounds § 158; *see* McGaffin Decl. ¶ 3. In addition, there is no evidence before this Court that the Capitol Police have implemented this regulation in a way that is directed more towards one point of view than another.

The Court, however, cannot conclude that the regulation is reasonable in light of the purposes it could legitimately serve. While the regulation is justified by the need expressed in the statute to prevent disruptive conduct in the Capitol, it sweeps too broadly by inviting the Capitol Police to restrict behavior that is in no way disruptive, such as "speechmaking . . . or other expressive conduct . . . ." Traffic Regulations for the Capitol Grounds § 158. Because the regulation's proscriptions are not limited to the legitimate purposes set forth in the statute, it is an unreasonable and therefore an unconstitutional restriction on speech. *See Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 575, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (general prohibition of First Amendment activity in airport cannot be justified even if airport is nonpublic forum "because no conceivable government interest would justify such an absolute prohibition of speech"). For these reasons, and those discussed in Section II B of this Opinion, the regulation is both unreasonable and unconstitutionally overbroad. *See infra* at 13–14.[4]

---

**4.** The relationship between functional forum analysis and the overbreadth doctrine was explained by the Supreme Court in *Forsyth County, Georgia v. Nationalist Movement:* A government regulation that allows arbitrary application, and is thus unconstitutionally overbroad, is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (quoting *Heffron v. Internatonal Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)).

**5.** 40 U.S.C. § 193f(b) provides in relevant part:

## B. *Due Process*

Plaintiff also contends that the Capitol Police Board's regulation violates due process because it is unconstitutionally vague both as written and as applied. Defendants respond that the regulation is constitutional because without the guidance of the Capitol Police Board's definition of the word "demonstration," individual Capitol Police officers would be left with no measures by which to determine what behavior is prohibited by the demonstration ban. The Court disagrees.

Capitol Police officers have more than sufficient guidance from Congress without any assistance from the regulation issued by the Capitol Police Board as to what behavior is and is not permitted within the Capitol. Indeed, the regulation goes beyond what Congress intended and permits the Capitol Police to block activity not proscribed or intended to be proscribed by the statute Congress enacted. The statute prohibits loud, threatening or abusive language; any disorderly or disruptive conduct engaged in with the intent to impede, disrupt or disturb the orderly conduct of any session of Congress or a congressional hearing or committee meeting; any behavior that obstructs or impedes passage through or within the Capitol or any of its buildings or grounds; physical violence; and parades and picketing. 40 U.S.C. § 193f(b)(4)-(7).[5] When viewed in

It shall be unlawful for any person or group of persons willfully and knowingly -

 * * * * * *

(4) to utter loud, threatening, or abusive language, or to engage in any disorderly or disruptive conduct, at any place upon the United States Capitol Grounds or within any of the Capitol Buildings with intent to impede, disrupt, or disturb the orderly conduct of any session of the Congress or either House thereof, or the orderly conduct within any such building of any hearing before, or any deliberations of, any committee or subcommittee of the Congress or either House thereof;

(5) to obstruct, or to impede passage through or within, the United States Capitol Grounds or any of the Capitol Buildings;

the context of these other various forms of statutorily prohibited behavior, Congress' statutory prohibition against "demonstrat[ing]" appears aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands. The police could properly use the statutory standards of Section 193f(b) itself to control, for example, groups of people praying in a way that impeded or obstructed passageways, hearings or meetings, involved loud, threatening or abusive language or physical violence, or was otherwise disorderly or disruptive. Plaintiff's activity was none of these.

■ The Capitol Police Board's definition of "demonstration activity" as "speechmaking ... or other expressive conduct that convey[s] a message supporting or opposing a point of view or has the intent, effect or propensity to attract a crowd of onlookers," see Traffic Regulations for the Capitol Grounds § 158, goes well beyond the statutory proscriptions. It does not provide either permissible or sufficient guidance under the statute it purports to implement to survive a constitutional challenge. In fact, the definition of "demonstration" in the regulation—encompassing all expressive conduct, whether disruptive or not—appears to expand the restrictive powers given by statute to the Capitol Police rather than limit or guide them. This definitional "guidepost" thus has the potential to squelch nearly any type of expressive conduct, whether or not it is actually a demonstration, and may sweep within its scope expression that is protected by the First Amendment. The regulation therefore is both unconstitutionally overbroad and unconstitutionally vague.

(6) to engage in any act of physical violence upon the United States Capitol Grounds or within any of the Capitol Buildings; or

(7) to parade, demonstrate, or picket within any of the Capitol Buildings.

While there certainly are types of expressive acts that rise to the level of a demonstration, any regulation that allows a police officer the unfettered discretion to restrict behavior merely because it "conveys a message" or because it has a "propensity to attract a crowd of onlookers" cannot survive a due process challenge. The regulation as written allows a police officer to restrict any sort of expressive conduct when, in the eyes of the particular officer, it *might* attract onlookers—without regard to whether it in fact attracts a crowd of onlookers or whether it in fact disrupts or obstructs. The determination of what conduct is prohibited by such a regulation therefore necessarily will vary depending on the subjective judgment of the particular officer regarding what conduct in his or her judgment has a "propensity to attract a crowd of onlookers." Such a regulation does not provide any standard at all. Rather, it "confers on the police a virtually unrestrained power to arrest and charge persons with a violation" and "the opportunity for abuse ... is self-evident." *Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 576, 107 S.Ct. 2568, 96 L.Ed.2d 500 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135–36, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) (Powell, J., concurring)); *see Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123, 129–30, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (a law is overbroad if it "delegates overly broad discretion to the decisionmaker ... [or] sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected"); *see also New York v. Ferber*, 458 U.S. 747, 768, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (quoting *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980)).[6]

6. The overbreadth doctrine is "predicated on the sensitive nature of protected expression: 'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected

The virtually standardless, broad discretion given to the Capitol Police by this regulation also causes it to be unconstitutionally vague. A law is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, if it fails to provide explicit standards to those who enforce it, or if it operates to inhibit the free exercise of First Amendment freedoms by chilling such exercise by its uncertain meaning. *See Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Not only is the standard set forth in the regulation unconstitutionally overbroad because it permits the punishment of constitutionally protected conduct, but it is unconstitutionally vague because it subjects the exercise of the right to free speech to "an unascertainable standard." *Coates v. Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). If "men [and women] of common intelligence must necessarily guess at [the regulation's] meaning," it does not provide fair notice to citizens of what is prohibited. *Id.* (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The regulation gives neither fair notice nor fair warning to those who may be considered by the Capitol Police to be violating its prohibitions and therefore may chill citizens' exercise of their First Amendment freedoms in the United States Capitol. The regulation as written cannot survive plaintiff's due process vagueness challenge. *See*

*Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

Finally, the regulation is unconstitutionally vague as applied. While neither the statute *nor* the regulation expressly prohibits prayer in the Capitol, defendants maintain that there is an effective ban on prayer inside the Capitol building: "The ban on demonstration activities includes [a ban on] prayer, unless it is conducted in the authorized use of the Chapel, or in a designated room upon invitation of a Member." Defs.' Statement of Undisputed Facts ¶ 8.[7] The regulation as applied in this case therefore amounts to an unwritten rule banning all prayer or certain acts related to, or messages conveyed by, prayer. Such a ban, however, is found nowhere in the statute enacted by Congress or even in the regulation promulgated by the Capitol Police Board. It is an unwritten interpretation of the regulation, apparently announced for the first time in this litigation. As such, the ban on prayer so clearly fails to give fair notice as to what conduct is prohibited either by statute or by regulation that it necessarily lacks sufficient definiteness to provide fair warning for "ordinary people [to] understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *see Smith v. Goguen,* 415 U.S. at 572–73, 94 S.Ct. 1242; *Grayned v. Rockford,* 408 U.S. at 110, 92 S.Ct. 2294. It therefore violates due process.

Defendants argue, however, that "ordinary people are capable of understanding

---

expression.'" *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73. While plaintiff has argued that the regulation at issue violates due process because it is unconstitutionally vague and did not phrase his due process challenge in terms of overbreadth, "the doctrines of vagueness and overbreadth are not entirely distinct, and ... the vices of vagueness and overbreath are not wholly separable, in the area of the [F]irst [A]mendment." Note, *The First Amendment Overbreadth Doctrine,* 83 HARV. L. REV. 844, 873 (1970).

7. The government's argument in its brief only underscores the problem: "This conduct is prohibited not because it is prayer, but because it is conduct that expresses a particular message or point of view (that of prayer or religious observance). To conduct prayers during their tour inside the Capitol building is to engage in a demonstration of the group's views about prayer." Defs.' Motion to Dismiss or for Summary Judgment at 13.

that while they can engage in demonstrative activities outside the Capitol building, once inside, they are prohibited from doing so." Defs.' Motion to Dismiss or for Summary Judgment at 20. This argument not only begs the question, but assumes that an ordinary person would understand that the act of clasping one's hands, closing one's eyes and bowing one's head for a very few minutes would be considered a demonstration. The Court finds no reason why the ordinary person would understand that such conduct is prohibited. The regulation provides neither fair notice nor fair warning. The regulation is unconstitutionally vague as applied.

For these reasons, the Capitol Police are enjoined from restricting any acts that they believe constitute "expressive conduct that convey[s] a message supporting or opposing a point of view or has the ... propensity to attract a crowd of onlookers," including the discrete act of bowing one's head, closing one's eyes and clasping one's hands. An Order consistent with this Opinion shall be issued this same day.[8]

SO ORDERED.

### ORDER AND JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment. Upon consideration of the parties' memoranda in support of their cross motions for summary judgment and in opposition to those of their adversaries, their supplemental memoranda, and the oral argument presented by counsel in Court, it is hereby

ORDERED that plaintiff's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that defendants' motion to dismiss or, in the alternative, for summary judgment is DENIED; it is

FURTHER ORDERED that defendants and their agents or employees are ENJOINED AND RESTRAINED from enforcing, threatening to enforce or attempting to enforce the ban on prayer against Reverend Pierre Bynum when he prays as part of the privately conducted prayer tours of the United States Capitol that he leads; it is

FURTHER ORDERED that defendants, their agents and employees are ENJOINED AND RESTRAINED from enforcing any restrictions on First Amendment conduct within the United States Capitol on the basis that such conduct is "expressive conduct that convey[s] a message supporting or opposing a point of view or has the ... propensity to attract a crowd of onlookers;" it is

FURTHER ORDERED that defendants are ENJOINED AND RESTRAINED from restricting the discrete act of bowing one's head, closing one's eyes and clasping one's hands within the United States Capitol; it is

FURTHER ORDERED that JUDGMENT is entered for plaintiff; it is

FURTHER ORDERED that this Order shall constitute a FINAL JUDGMENT in this case.

SO ORDERED.

---

**8.** Because the Court concludes that the Capitol Police Board regulation is unconstitutional, it is unnecessary to reach the issues of whether the regulation violates the Free Exercise Clause of the First Amendment or the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*