Robert LEDERMAN, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

No. CIV.A. 99–3359(RWR).

United States District Court,
District of Columbia.

March 5, 2001.

Neal Goldfarb, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, for Robert Lederman.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for U.S., U.S. Capitol Police, Gary L. Abrecht, Lawrence Louthery, Charles McQuay.

Thomas L. Koger, Office of Corporation Counsel, D.C., Office of the Administrator, Washington, DC, for District of Columbia.

Eugene A. Adams, III, Counsel of the District of Columbia, Thomas L. Koger, Office of Corporation Counsel, D.C., Office of the Administrator, Washington, DC, for Robert Rigsby.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff, an artist and president of an organization called Artists' Response to Illegal State Tactics ("A.R.T.I.S.T."), challenges the validity of an amended Capitol Grounds Regulation that created a no-demonstration zone within the 250–foot perimeter of the United States Capitol building. He also seeks to recover damages for his 1997 arrest pursuant to the original regulation. In an Opinion issued on March 14, 2000, I held the original regulation to be unconstitutional on its face and permanently enjoined its enforcement. *See Lederman v. United States*, 89 F.Supp.2d 29 (D.D.C.2000). The federal

defendants[1] have moved for reconsideration as to the public forum aspect of that ruling, or in the alternative, for clarification as to the specific United States Capitol Grounds areas which constitute a traditional public forum for First Amendment purposes. Because I remain unpersuaded by the federal defendants' arguments that plaintiff was arrested in a non-public forum, I will deny their motion for reconsideration. I will, however, clarify that, to reach my decision, I need have concluded only that the sidewalk in front of the Capitol steps, on which plaintiff was arrested in 1997 and on which he intended to demonstrate in 1999, constitutes a traditional public forum.

Two days after I issued the March 14, 2000 ruling, the Capitol Police Board amended the Capitol Grounds Regulation. Plaintiff has amended his complaint to challenge the amended regulation. The federal defendants (hereinafter, "defendants") have moved to dismiss, or in the alternative, for summary judgment on plaintiff's amended complaint. Plaintiff has cross-moved for summary judgment on his claim for declaratory and injunctive relief as to the amended regulation, and for partial summary judgment as to liability on his damages claims against the federal defendants.[2] Because I find that the amended regulation is reasonably related to the purpose of the enabling statute, but is not narrowly tailored to further a significant governmental interest, and that plaintiff has established viable damages claims as to certain constitutional torts, parties' cross-motions for summary judgment will be granted in part and denied in part. As in my March 14, 2000 ruling, I also will issue a declaratory judgment invalidating the offending regulatory language on its face as contrary to the First Amendment and permanently enjoin its enforcement.

## BACKGROUND

The factual circumstances that initially gave rise to this action are set forth in detail in the March 14, 2000 Memorandum Opinion, *Lederman*, 89 F.Supp.2d at 30–34. On March 11, 1997, plaintiff was arrested by two Capitol Police officers, Loughery and McQuay, while peacefully leafleting and holding a small sign on a sidewalk immediately in front of the House steps at the south end of the Capitol building. A District of Columbia Superior Court Hearing Commissioner dismissed the charges against plaintiff on November 30, 1998, holding that the Capitol Grounds Regulations under which plaintiff had been arrested, Article XIX, Capitol Grounds Regulation § 158(a), was unconstitutional both on its face and as applied to plaintiff's free speech activity. Plaintiff, who intended to leaflet in the same area in March 1999, brought his initial suit to preliminarily and permanently enjoin enforcement of the Capitol Grounds Regulation and to recover damages for his 1997 arrest.[3]

The specific Capitol Grounds Regulation at issue in the first case created a no-demonstration zone within the 250 foot perimeter of the Capitol building. This regulation imposed an outright ban on the following types of activities within the zone:

> [P]arading, picketing, speechmaking, holding vigils, sit-ins, or other expressive conduct that conveys a message supporting or opposing a point of view or has the intent, effect, or propensity to attract a crowd or onlookers, but does

1. The federal defendants include the United States of America, the United States Capitol Police, Chief of the Capitol Police Gary Abrecht ("Abrecht"), sued in his official capacity, and Capitol Police Officers, Lieutenant Lawrence Loughery ("Loughery") and Officer Charles McQuay ("McQuay"), sued in their individual capacities.

2. Plaintiff does not seek summary judgment against the District of Columbia on his damages claims alleged in Count VI of the Complaint, and he does not seek summary judgment as to the amount of his damages at this time.

3. The March 14, 2000 Opinion did not address plaintiff's damages claims.

not include merely wearing Tee shirts, buttons, or other similar articles of apparel that convey a message.

Article XIX, Capitol Grounds Regulation § 158(a).

On cross-motions for partial summary judgment, I held that the creation of a no-demonstration zone around the Capitol was within the Police Board's statutory authority to enact. *See Lederman*, 89 F.Supp.2d at 33–35. I went on to hold, however, that the Capitol Grounds Regulation could not "pass muster under the far more exacting standards of the First Amendment." *Id.* at 35, 41–42. In reaching that conclusion, I first found that defendants had failed to rebut the presumption that the sidewalk on which plaintiff was arrested in 1997 was a traditional public forum for First Amendment purposes. *Id.* at 35–37. I then held that the Capitol Grounds Regulation was not a "reasonable time, place, and manner" restriction because, although the regulation left open ample alternative channels of expression, the portion of the regulation under which plaintiff was arrested in 1997 was not narrowly tailored to serve a significant government interest. *Id.* at 37–42.

In conducting my narrow tailoring inquiry, I first observed that the Capitol Grounds Regulation, via § 158(a)'s definition of "demonstration activity," banned "three general categories of activity within 250 feet of the Capitol: (1) 'parading, picketing, speechmaking, holding vigils, sit-ins'; (2) 'other expressive conduct that conveys a message supporting or opposing a point of view'; and (3) other expressive conduct that 'has the intent, effect, or propensity to attract a crowd or onlookers[.]' " *Id.* at 39 (quoting Article XIX, Capitol Grounds Regulations § 158(a)). I then held that plaintiff's leafleting fell into the second, and most expansive, category of banned speech (*i.e.*, speech that constituted "other expressive conduct that conveys a message supporting or opposing a point of view"). *Id.* Accordingly, my analysis focused on that portion of the regulation. Although I

agreed with the federal defendants that the Capitol Grounds Regulation left open adequate alternative channels of expression, I nevertheless concluded, after analyzing relevant Supreme Court and D.C. Circuit precedent, that such a broadly-worded prohibition on speech within a traditional public forum was "antithetical to the narrow tailoring demanded by the First Amendment." *Id.* at 42. Accordingly, I struck down on its face the Capitol Grounds Regulation's ban on "other expressive conduct that conveys a message supporting or opposing a point of view" within the 250-foot radius of the Capitol and permanently enjoined future enforcement of that provision of the regulation.

On March 16, 2000, two days after my ruling, the Capitol Police Board amended § 158(a)'s definition of demonstration activity (hereinafter, the "amended regulation"). The amended regulation became effective on March 30, 2000. The following changes were made, inserting the bolded language and dropping the stricken language:

> [P]arading, picketing, **leafleting,** ~~speechmaking,~~ holding vigils, sit-ins, or other expressive conduct **or speechmaking** that conveys a message supporting or opposing a point of view **and** ~~or~~ has the intent, effect, or propensity to attract a crowd or onlookers, but does not include merely wearing Tee shirts, buttons, or other similar articles of apparel that convey a message.

Article XIX, Capitol Grounds Amended Regulation § 158(a). The amended regulation alters the definition of prohibited demonstration activity in three ways. First, it adds leafleting to the list of specifically prohibited activities included in the first category of speech proscribed under the original regulation. Second, by changing the disjunctive "or" to the conjunctive "and," the amended regulation merges the second and third categories of speech into a catch-all provision banning "other expressive conduct" that both "conveys a message supporting or opposing a point of

view" and "has the intent, effect or propensity to attract a crowd or onlookers." Third, the amended regulation removes the specific ban on "speechmaking" from category one and incorporates it into the new catch-all provision.

Soon after notice of the amended regulation was published, plaintiff amended his complaint to assert that the new definition of "demonstration activity" was unconstitutional. (Am.Compl.¶¶ 1, 11, 33–36.) To establish his standing to bring such a challenge, plaintiff stated that he intends to return to Washington in the future to leaflet in the current no-demonstration zone. (*Id.* ¶ 36.) Plaintiff also broadened his allegations about the types of activities in which he intends to engage, characterizing it as "constitutionally-protected demonstration activity ... including, but not necessarily limited to, leafleting and holding signs." (*Id.*) The amended complaint retains those counts of the original complaint which sought damages for his 1997 arrest.

Aside from the federal defendants' request that I reconsider or clarify my earlier ruling, defendants have moved for summary judgment on all counts of plaintiff's amended complaint. Plaintiff has cross-moved for partial summary judgment. Specifically, he seeks summary judgment on Counts I and II of his amended complaint, which challenge the legality of § 158(a)'s newly amended definition of "demonstration activity," summary judgment on Count III as to the federal officers' liability under the Federal Tort Claims Act, 28 U.S.C. § 2674 (West 2000), and summary judgment on Counts IV and V as to the individual Capitol Police officers' liability under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

## DISCUSSION

I. *Motion for Reconsideration or, in the Alternative, for Clarification*

At the time the Capitol Police Board promulgated the amended regulation, the federal defendants moved that I reconsider or, in the alternative, clarify my original public forum ruling because "the public forum question covers several different types of property encompassed within the no-demonstration zone—the steps going up to the House and Senate buildings on the east and west sides of the Capitol, the large road on the east side of the Capitol, the sidewalks on the East side of the Capitol, and the grassy areas...." (Federal Defs.' Mem.Supp. Reconsideration or Clarification at 2.) The federal defendants have requested that I clarify my earlier decision by "address[ing] the nature of [the] forum that each constitutes...." (*Id.*) Plaintiff opposes the motion, but acknowledges that the public forum status of the House and Senate steps are "not at issue in this action, and they are not affected by the Court's ruling." (Pl.'s Opp'n to Federal Defs.' Mot. to Reconsider or Clarification at 4.)

While the federal defendants' desire for a ruling on the public forum status of various locations on the Capitol Grounds is understandable, in reaching my conclusion that plaintiff's speech occurred in a traditional public forum, it was only necessary for me to address the public forum status of the sidewalk that juts out several feet from the House and Senate steps and runs along the East Front of the Capitol (hereinafter, the "East Front Sidewalk"). It was there, on the portion of the East Front Sidewalk in front of the House steps, that plaintiff was arrested in March 1997, and it is where plaintiff intended to demonstrate again in March 1999. Indeed, in *United States v. Grace*, 461 U.S. 171, 181–84, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), the Supreme Court addressed the constitutionality of a regulation governing demonstration activity on the entire Supreme Court grounds only as it applied to the sidewalk on which the two demonstrators challenging the regulation had engaged in their free speech activity. The D.C.Circuit adopted a like approach in *Henderson v. Lujan*, 964 F.2d 1179, 1182

(D.C.Cir.1992), addressing the public forum status of the sidewalk on the grounds of the Vietnam Veterans Memorial that plaintiff had been arrested on, but declining to address the public forum status of the "curvilinear paths leading to the Memorial wall." Thus, I will decline the federal defendants' invitation to rule explicitly on the public forum status of locations other than the East Front Sidewalk.

The federal defendants have asked that I reconsider my ruling that the East Front Sidewalk is a traditional public forum, essentially putting forth the same line of argument that I rejected in my March 14, 2000 ruling. They concede that the grassy areas of the Capitol Grounds are traditional public fora, but maintain that other paved areas around the Capitol Grounds, including the Capitol sidewalk, are not public fora because they are physically and functionally distinguishable from regular streets and sidewalks. While I respect the federal defendants' persistence, I still cannot accept their position.

I agree with the federal defendants' contention that the East Front Sidewalk is physically and functionally distinguishable from an ordinary public sidewalk in several respects. The typical public sidewalk, after all, does not abut the steps to the Capitol building. Moreover, the East Front Sidewalk, unlike other public sidewalks, is located well within the outer boundaries of the Capitol Grounds and does not run parallel to any city street. The sidewalk in *Grace,* by contrast, had "no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." *Grace,* 461 U.S. at 180, 103 S.Ct. 1702; *cf. Henderson,* 964 F.2d at 1180–82 (finding that leafleting on the sidewalks bordering

Constitution Avenue "within an area officially designated by the National Park Services as the Vietnam Veterans Memorial" was leafleting in a traditional public forum in part because the sidewalks at issue "are used by thousands of pedestrians every year, including not only Memorial visitors, but people going other places"). Because the East Front Sidewalk is separated from the city streets surrounding the Capitol Grounds, it is reasonable to assume that it is used primarily by people coming to and from the Capitol building. The physical location and functional use of the Capitol sidewalk thus implies that it is not an ordinary sidewalk.

█ As the federal defendants have recognized, however, the fact that the East Front Sidewalk is within an enclave of sorts is not dispositive of the public forum question, but is merely one factor to consider. Courts also consider the "objective use and purposes" of the property as well as whether the property "by history and tradition has been open and used for expressive activity[,] ... [property such as] the outdoor grounds of a seat of legislative and/or executive power." *Warren v. Fairfax County,* 196 F.3d 186, 189–90 (4th Cir. 1999) (*en banc*). Thus, a sidewalk that is physically distinct from regular sidewalks because it is located within an enclave does not automatically lose its status as a traditional public forum.[4] One must also examine the nature of the enclave of which the sidewalk is a part.

█ The enclave in this case is part of the Capitol Grounds, the seat of our national legislature and an enduring symbol of our democracy. It is an area well-recognized as a situs that is inherently and uniquely suited for demonstration activity. *See Lederman,* 89 F.Supp.2d at 36 n. 5 and cases cited therein. Moreover, the Capitol

---

4. As one prominent constitutional scholar has observed, undue emphasis on appearances as opposed to the "functional significance" of the situs "as a channel of communication" can have dire consequences because "appearances are well-within the government's control; a doctrine that suggests that posting 'no public speakers' signs could alter the outcome in a case like *Grace* hardly offers secure protection to first amendment concerns." Lawrence H. Tribe, *American Constitutional Law* § 12–24 (2d ed.1988).

Grounds also have the physical characteristics of a traditional public forum because the large outdoor area surrounding the Capitol building is "merely a combination of the three prototypical examples of traditional public fora—streets, sidewalks, and parks." *Warren*, 196 F.3d at 190.

The federal defendants argue that they have rebutted the presumption that the East Front Sidewalk is a traditional public forum because the objective use and purpose of the Capitol sidewalk is not akin to that of a regular city sidewalk. It is true that the D.C.Circuit has suggested that a piece of property that would normally be classified as a traditional public forum can lose that status if it is has a specialized use that substantially outweighs its public characteristics. For example, in declining to address the public forum status of the "curvilinear paths leading to the [Vietnam Veterans] Memorial wall" the D.C.Circuit opined that "their evidently more specialized use *may* outweigh the attributes that would otherwise mark them as public forums." *Henderson*, 964 F.2d at 1182 (emphasis added).

The federal defendants maintain that the East Front Sidewalk is dedicated to a special limited use because it is traveled mainly by those coming and going to the Capitol building. The sidewalk also serves as an access point for members of Congress to gain entry to the Capitol building. What the federal defendants fail to explain, however, is why these characteristics somehow deprive the sidewalk of its public forum status. In *Warren*, the sidewalks coursing through the mall in front of the Fairfax County Government Center Complex did not lose their public forum status simply because the people who used those sidewalks included those coming to or from the Complex or because legislators might use them before conducting government business. 196 F.3d at 188–90. One need only observe the East Front Sidewalk to see that many people who are *not* coming to and from the Capitol also use the sidewalk for a wide range of activities,

from jogging to dog-walking. Thus, the outdoor mingling of the public, members of Congress, congressional staff, and the news media on the Capitol sidewalk implies that it is a *particularly* appropriate place for individuals to express their ideas and to petition the government. This is in contrast to areas in the interior of the Capitol, where heightened decorum is reasonably expected and greater limitations on expression have in turn been tolerated "in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators." *Bynum v. United States*, 93 F.Supp.2d 50, 55 (D.D.C. 2000). The federal defendants have failed to rebut the presumption that the East Front Sidewalk is a traditional public forum. Accordingly, I will deny the their motion that I reconsider my holding that the East Front Sidewalk is a traditional public forum.

## II. *Cross–Motions for Summary Judgment*

Defendants moved to dismiss plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5) and (6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. I will consider defendants' motion as one for summary judgment, because I have not excluded matters outside the pleadings. *See* Fed.R.Civ.P. 12(b); *Richardson v. Rivers*, 335 F.2d 996, 998 (D.C.Cir.1964); *Batson v. Powell*, 912 F.Supp. 565, 570 (D.D.C.1996).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of proving that there is "no genuine issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden has been met, the nonmovant must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue

for trial.'" *Id.* The mere allegation of some factual dispute between the parties is not alone sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses" and it should be construed accordingly. *Celotex,* 477 U.S. at 323–324, 106 S.Ct. 2548. In considering a summary judgment motion, a court is to believe "[t]he evidence of the nonmovant . . ., and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. No genuine issue exists unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

A. *Validity of the Amended Regulation*

1. *First Amendment Analysis of the Amended Regulation*

█ As discussed above, I abide by my initial ruling that the sidewalk on which plaintiff was arrested in 1997 is a traditional public forum for First Amendment purposes. *Lederman,* 89 F.Supp.2d at 35–37. Accordingly, to be permissible under the First Amendment, the amended regulation must be "content-neutral," "leave open ample alternate channels of communication," and be "narrowly tailored to serve a significant government interest." *Grace,* 461 U.S. at 177, 103 S.Ct. 1702. In addition, for the reasons enunciated in the March 14, 2000 Opinion, I also hold that the amended regulation is content-neutral and leaves open ample alternative channels of expression. *See id.* at 37–39.

A regulation is narrowly tailored if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 797–98, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Frisby v. Schultz,* 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)

("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy"). The regulation, however, does not have to be "the least intrusive means" of advancing the government's legitimate interests. *Ward,* 491 U.S. at 797–98, 109 S.Ct. 2746. In my earlier Opinion, the focus was on whether the portion of the regulation under which plaintiff was arrested was "narrowly tailored" to pass the heightened public forum scrutiny imposed by the First Amendment. In this case, the focus is on different language, namely, whether changing § 158(a)'s "or" to an "and"—and thus making it mandatory that expressive conduct "has the intent, effect, or propensity to attract a crowd or onlookers" before an officer can make an arrest—is sufficient to render the amended regulation narrowly tailored.

Defendants argue that the amended regulation is narrowly tailored, because it now renders conduct invalid only when it "has the intent, effect or propensity to attract a crowd or onlookers" and, therefore, the amended regulation would not restrict private speech. (Mem.Supp.Defs.' Mot. to Dismiss or in the Alternative, for Summ.J. ("Defs.' Mem.") at 17.) Defendants further assert that the government has legitimate interests in "security concerns, . . . congestion and safety issues, [which] are not posed by tourists or tour groups." (*Id.* at 18–19 (citing Second Howe Decl. ¶ 7).) Specifically, defendants assert that tourists "do not carry on discussions in the streets or on the sidewalks at the base of the House and Senate steps." (*Id.* at 19.) Defendants maintain that the new restrictions "target precisely, and no more, the problems sought to be addressed." (*Id.*)

Plaintiffs argue that, while the amended regulation may no longer restrict private conversations, "the regulation still prohibits virtually every form of communication aimed at the general public [and] restricts a substantial amount of expression that does not threaten the government's legitimate interests." (Pl.'s Mem.Opp'n to

54

Defs.' Mem. and in Supp.Pl.'s Cross–Mot. for Partial Summ.J. ("Pl.'s Mem.") at 10.) I agree. The amendment amounts to a change in form, but not substance. An officer reasonably could conclude that most any type of expressive conduct, outside of "wearing Tee shirts, buttons, or other similar articles of apparel that convey a message," is a restricted activity if it (1) conveys a message supporting or opposing a point of view; *and* (2) has the intent, effect, or propensity to attract a crowd or onlookers. Much "expressive conduct" by definition "conveys a message supporting or opposing a point of view." It is hard to conceive of much expression that a reasonable officer would *not* find to be conveying a message regarding some point of view.

The second part of the amended regulation, now making it mandatory that the expressive conduct at issue "has the intent, effect, or propensity to attract a crowd or onlookers" before an officer can make an arrest, does not save this amended regulation from the narrow tailoring requirement. First, an officer reasonably could determine that any expressive conduct meeting the first definition, with the possible exception of private conversations, has the "intent" or "propensity" to attract a crowd or onlookers. Second, the government does not explain how expansively it would define "a crowd or onlookers," such that, under the amended regulation's language, it appears an officer has the discretion to consider two or more persons to be a crowd or onlookers under this regulation.[5] On its face, the amended regulation makes it reasonable for an officer to consider as onlookers two or more individual passers-by or picture-takers, who happen to come upon a speaker at the same time. The subjectivity involved in applying the amended regulation opens it to uneven application and enforcement without a specific means of enforcing the government's asserted interests. Finally, even if it is

apparent that a speaker has the "effect" of attracting a crowd or onlookers, it may be difficult for a reasonable officer to determine whether the two or more extra individuals are in fact onlookers or whether they were taking part in the expressive activity. To this end, defendants have failed to provide sufficient evidence to support their assertion that, as an undisputed fact, the activities of tourists and demonstrators are so distinct such that a reasonable officer would be able to differentiate between tourists and demonstrators and act appropriately under the amended regulation. (Defs.' Mem. at 19; Second Howe Decl. ¶ 7.) Rather, as the District of Columbia Court of Appeals has found, the actions of tourists and demonstrators are not distinct, because, like demonstrators, "[t]ourists and others passing through the [Capitol Grounds] do not always stay where they are supposed to." *Wheelock v. United States*, 552 A.2d 503, 508 (D.C. 1988).

Defendants have not shown that their claimed interests in restricting expressive activity to address security, congestion and safety concerns justify the amended regulation's continued burden upon speech. "[Defendants] have taken the effect of the statute [here, the restriction on expressive activities in a public forum] and posited that effect as the [government's] interest. If accepted, this sort of circular defense can sidestep judicial review of almost any statute, because it makes all statutes look narrowly tailored." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 120, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). As I held in the March 14, 2000 Opinion concerning the original regulation, the amended regulation still lacks "a clear and substantial nexus between the restricted activity and the government's stated goals" of addressing security, congestion and safety issues.

**5.** All demonstrators are subject to § 158(a)'s restrictions, whether they are alone or in a group. (*See* Second Howe Decl. at ¶ 5.) Therefore, it is entirely possible for an officer to conclude that there is a "crowd" or that there are "onlookers" just by the fact that there are more than two people gathered in the same area.

Defendants have failed to carry their burden of establishing that the amended regulation is narrowly tailored to further significant government interests. Accordingly, defendants' motion for summary judgment as to Count I will be denied, and plaintiff's cross-motion for summary judgment as to Count I will be granted.[6]

### 2. *Statutory Authority*

In my previous ruling, I dismissed Count II of plaintiff's original complaint which alleged that the creation of a no-demonstration zone within the 250-foot perimeter of the Capitol was beyond the Capitol Police Board's statutory authority to enact. *See Lederman,* 89 F.Supp.2d at 33–35. Count II of plaintiff's amended complaint contains the same allegation. Because plaintiff has not proffered any reason why I should reconsider my previous ruling in light of the amended regulation, defendants' motion for summary judgment on Count II of plaintiff's amended complaint will be granted, and plaintiff's cross-motion for summary judgment as to Count II will be denied.

### B. *Federal Tort Claims Act*

Plaintiff has sued the Chief of the Capitol Police, Abrecht, in his official capacity, and two Capitol Police officers, Loughery and McQuay, in their individual capacities for violating the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674.[7] Plaintiff moved for summary judgment as to liability for damages under the FTCA. Defen-

dants argue that Loughery and McQuay were justified in arresting plaintiff, and thus did not violate the FTCA, because the officers had probable cause to arrest plaintiff under the Capitol Grounds Regulation in effect at the time of plaintiff's 1997 arrest. (Defs.' Mem. at 20–22.)

Plaintiff argues that Loughery and McQuay are liable for violating the FTCA as to plaintiff's false arrest and imprisonment, because there was no probable cause for the warrantless arrest. (Pl.'s Mem. at 19–20.) Specifically, plaintiff contends that the officers lacked both probable cause and a reasonable good faith belief that plaintiff's arrest was lawful, because plaintiff's conduct was protected under the tourist standard. (*Id.* at 20–22.) In response, defendants argue that the officers' conduct was unjustified only if they disregarded a "settled, indisputable law." (Defs.' Reply at 16 (quoting *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (holding that an official's actions are not justified if the official ignores or disregards "settled, indisputable law")).)

▇ In cases involving demonstrations in the public areas inside and outside of the Capitol building, the District of Columbia Court of Appeals consistently has held that the "tourist standard" was to be applied to an arrestee's conduct "as a means of determining if a statute, as applied in a particular case, is constitutional." *Reale v. United States,* 573 A.2d 13, 15 (D.C.1990) (per curiam).[8] The "tourist

---

**6.** For the reasons stated in my earlier Opinion, I will strike the amended regulation as facially invalid, rather than attempt to rewrite the regulation to incorporate the tourist standard or some other limiting construction. *Lederman,* 89 F.Supp.2d at 42–43.

**7.** Section 2674 provides in relevant part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. Parties do not dispute that the United States has respondeat superior liability for defendant officers' actions or that plaintiff has exhausted his administrative remedies. (Pl.'s Mem. at 22–24; Defs.' Mem. Reply to Pl.'s Mem. ("Defs.' Reply") at 16 n. 5.)

**8.** In fact, as early as 1977 in *Dellums v. Powell,* the D.C.Circuit applied the same legal standard regarding conduct on the Capitol Grounds, although at that time, the court did not formally refer to it as the "tourist standard." 566 F.2d 167, 204–05, n. 22 & App. (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (holding

standard" restricts the scope of statutes by penalizing only conduct that is more disruptive or more substantial (in degree or number) than that normally engaged in and routinely permitted by tourists and others. *Berg v. United States*, 631 A.2d 394, 398–400 (D.C.1993). Thus, if the demonstrator's arrest was lawful under the tourist standard, the arrest also would be lawful under a content-neutral statute or regulation at issue. *Id.*

In this case, the tourist standard clearly was a "settled, indisputable law" at the time of plaintiff's 1997 arrest. *See Hasty v. United States*, 669 A.2d 127, 130–33 (D.C.1995) (applying the tourist standard to plaintiff's conduct and holding that the officers were not justified in arresting plaintiff under D.C.Code § 9–112(b)(7),[9] because plaintiff's conduct did not violate the tourist standard); *Berg*, 631 A.2d at 398–400 (applying the tourist standard to plaintiffs' conduct and holding that the officers were justified in arresting plaintiffs under D.C.Code §§ 9–112(b)(5), (7) for demonstrating in the Capitol Rotunda, where they lay down on the Rotunda floor, displayed a large banner and refused to stand up when ordered to cease and desist); *Reale*, 573 A.2d at 15 (applying the tourist standard to plaintiffs' conduct and holding that the officers were justified in arresting plaintiffs under D.C.Code § 9–112(b)(4) for shouting in the House of Representatives chamber while the House was

in session); *Wheelock*, 552 A.2d at 508 (holding that the government failed to provide evidence that plaintiffs violated the tourist standard by standing and speaking in the Rotunda, because, like the plaintiffs, "[t]ourists and others passing through the Rotunda do not always stay where they are supposed to" stay); *see also Markowitz v. United States*, 598 A.2d 398, 409 (D.C.1991) (holding that courts must apply the tourist standard to arrestees' conduct that occurs in public access areas on the Capitol Grounds, but not to conduct that occurs in areas restricted to the general public).

Defendants contend that, because plaintiff did not show that a court has applied the tourist standard to the Capitol Grounds Regulation at issue (Article XIX, § 158(a)), the tourist standard cannot be considered settled, indisputable law. Defendants have failed, however, to provide any support or basis for this argument. Even though the tourist standard may not have been applied to the specific Capitol Grounds Regulation at issue here, it is settled, indisputable law that the tourist standard restricts the scope of regulations—including the Capitol Grounds Regulation—by penalizing only conduct that is more disruptive or substantial than that normally engaged in and routinely permitted by tourists and others. *See Berg*, 631 A.2d at 398–400. Defendants, thus, have

that Capitol Grounds regulations are limited in their ability to restrict individual or group conduct, such that, for Capitol Grounds regulations to be valid, "the conduct would have to be more disruptive or more substantial (in degree or number) than that normally engaged in by tourists and others and routinely permitted on the [Capitol] Grounds") (citing *United States v. Nicholson*, 97 Daily Wash. L.Rptr. 1216 (D.C.Ct. of Gen.Sess. June 19, 1969), *aff'd*, 263 A.2d 56 (1970)).

**9.** D.C.Code § 9–112(b) provides in relevant part:
(b) It shall be unlawful for any person or group of persons willfully and knowingly:
. . .
(4) To utter loud, threatening, or abusive language, or to engage in any disorderly or

disruptive conduct, at any place upon the United States Capitol Grounds or within any of the Capitol Buildings with intent to impede, disrupt, or disturb the orderly conduct of any session of the Congress or either House thereof, or the orderly conduct within any such building of any hearing before, or any deliberations of, any committee or subcommittee of the Congress or either House thereof;

(5) To obstruct, or to impede passage through or within, the United States Capitol Grounds or any of the Capitol Buildings; . . . [or]

(7) To parade, demonstrate, or picket within any of the Capitol Buildings.
D.C.Code §§ 9–112(b)(4), (5), (7) (West 2000).

not shown or explained how the officers would have been justified in ignoring the settled, indisputable tourist standard when they arrested plaintiff. Even if defendants had shown that the officers applied the tourist standard—which defendants have not shown—defendants failed to show beyond any factual dispute that the officers applied the standard in an appropriate manner. That is, defendants have not shown that plaintiff's conduct was more disruptive or substantial than that normally engaged in routinely by tourists and others without police intervention. *Id.*

The tourist standard is settled, clearly established law that restricted the scope of the original regulation in place during plaintiff's arrest.[10] Accordingly, plaintiff's motion for summary judgment on Count III will be granted insofar as it requests that the tourist standard be deemed to apply to defendants' conduct in determining defendants' liability under the FTCA.

■ While I find that the tourist standard applies to evaluate defendants' conduct under the FTCA, I also find that there is a material, factual dispute as to whether defendants reasonably applied the tourist standard when they arrested plaintiff under the original regulation. That is, whether defendants reasonably could have found plaintiff's conduct to be more disruptive or substantial than that normally engaged in by tourists is susceptible to more than one reasonable interpretation. Therefore, both parties' motions for summary judgment on Count III will be denied as to whether defendants reasonably applied the tourist standard when they arrested plaintiff.

### C. Bivens Actions Against the Individual Defendants

Plaintiff has sued Capitol Police Officers Loughery and McQuay in their individual capacities under *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and moved for summary judgment on the officers' liability for damages. In *Bivens,* the Supreme Court recognized a plaintiff's cause of action for damages against federal officials who, acting as individuals, violated the plaintiff's clearly established constitutional rights. 403 U.S. at 390–97, 91 S.Ct. 1999; *see Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Lederman has asserted *Bivens* claims against Loughery and McQuay, claiming that the officers, in their individual capacities, violated his First and Fourth Amendment rights by falsely arresting and imprisoning him for his lawful leafleting on the Capitol grounds.

#### 1. Service of Process

■ Defendants argue that plaintiff failed to serve properly the officers sued in their individual capacities, Loughery and McQuay. (Defs.' Mem. at 22–23.) Specifically, defendants contend that plaintiff failed to provide proof that he delivered a copy of the summons and complaint either to Loughery and McQuay or to their appointed agents. (*Id.*) Defendants also assert that, because the officers could arrest demonstrators only in their official capacities, plaintiff's first complaint could not have sought injunctive relief against Loughery and McQuay in their individual capacities. (Defs.' Reply at 17.) In addition, because plaintiff's first complaint did not address the damages claims against individual officers, defendants argue that the officers have not waived their insufficient process defense and may assert this defense now. (*Id.*)

Plaintiff argues that defendants waived their service of process defense because they failed to raise it in their motion to dismiss plaintiff's first complaint. (Pl.'s

---

**10.** The tourist standard also would have restricted the scope of the amended regulation so that the regulation would reach only conduct that is more disruptive or more substan-

tial (in degree or number) than that normally engaged in routinely by tourists and others without police intervention. *See Berg v. United States,* 631 A.2d at 398–400.

Mem. at 33–36.) In addition, as plaintiff points out, the initial complaint stated that defendants Loughery and McQuay were being sued in their individual capacities. (Compl.¶¶ 6–7.)

Pursuant to Federal Rules of Civil Procedure 12(g), (h),[11] defendants Loughery and McQuay must have raised their service of process defense in their response to plaintiff's first complaint for declaratory and injunctive relief. In response to plaintiff's original complaint, both Loughery and McQuay appeared and filed a partial motion to dismiss or for summary judgment, raising the Rule 12(b)(6) defense for failure to state a claim. Defendants did not raise the insufficient service of process defense in their initial response, even though it is undisputed that this defense was available. "A defense available at the time of an initial response to a pleading may not be asserted when the initial pleading is amended." *Weber v. Turner*, No. 80–0412, 1981 WL 26999, at *3 (D.D.C. Oct.2, 1980) (citing *Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir.1974)); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (1990) ("[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment").

In *Rowley*, the Director of Secret Service, who was sued in his individual and official capacities, argued in response to plaintiffs' amended complaint that he had never been personally served with a copy of the summons. 502 F.2d at 1329–30, 1332. The Fourth Circuit held that defendant had waived his insufficient service of

process defense, because "Rule 12(g) prevents the defense from being revitalized even though plaintiffs amended their complaint and provided Rowley with an opportunity to file a new motion under Rule 12, or an answer setting forth a defense which Rule 12 would permit to be presented by motion." *Id.* at 1332–33. The court further held that,

> [A]n amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading. An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended.

*Id.* at 1333; *see also Brohan v. Volkswagen Mfg. Corp. of Am.*, 97 F.R.D. 46, 48 (S.D.N.Y.1983) (holding that defendant in a wrongful death action waived its claim for lack of personal jurisdiction by failing to assert it in a motion or in its answer to the original complaint, and the fact that plaintiff thereafter filed an amended complaint did not revive defendant's right to assert the defense).

Loughery's and McQuay's procedural choices should not prejudice plaintiff's case now. Loughery and McQuay cannot maintain their improper service of process defense in response to plaintiff's amended complaint.

### 2. *Qualified Immunity*

Defendants argue that plaintiff's claims against Loughery and McQuay must be dismissed, because those officers have

---

**11.** Rule 12(g) provides in relevant part that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated [including failure to state a claim and failure to join a party indispensible]." Rule 12(h) states that

"[a] defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." Fed.R.Civ.P. 12(g), (h)(1).

qualified immunity against plaintiff's *Bivens* claims for violations of his First and Fourth Amendment rights. (Defs.' Mem. at 23–26.) Specifically, defendants assert that the officers' actions were reasonable and did not violate any law that was clearly established at the time of the arrest. (*Id.* at 24–26.) Plaintiff argues that the officers are not entitled to immunity because, when they arrested plaintiff, they acted unreasonably and in violation of the clearly established tourist standard. (Pl.'s Mem. at 25–27.) Plaintiff further argues that, because the tourist standard limited the scope of the Capitol Grounds Regulations, it is irrelevant that those regulations had not been ruled unconstitutional at the time of plaintiff's arrest. (*Id.*) Even if the officers reasonably could have arrested plaintiff under the Capitol Grounds Regulations, he says, the officers could not have acted reasonably in arresting plaintiff under the tourist standard, because the tourist standard clearly established that plaintiff's activity was protected. (*Id.*) Plaintiff argues that, since the tourist standard limits the extent of restrictions that the Capitol Grounds Regulations may impose on demonstrators, the officers had to comply with the tourist standard when they arrested plaintiff to avoid liability. (*Id.*)

An individual defendant in a *Bivens* action has qualified immunity if the defendant was sued for conduct that did not violate clearly established law at the time the defendant acted, even if that conduct is later determined to have been unconstitutional. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (holding that federal officers "are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see Davis v. Scherer,* 468 U.S. 183, 194, 196–97, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (holding that "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue" and that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"). The defendant officers' actions are evaluated under an objective "reasonableness" standard, and the officers' own views of whether the law was "clearly established" is irrelevant. *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727.

The focus of this inquiry is thus whether the tourist standard was a clearly established law at the time of plaintiff's arrest such that a reasonable officer should have applied the tourist standard to plaintiff's conduct in determining whether to make an arrest. A law is "clearly established" when precedents have made it "apparent" that the officer's conduct was unlawful. *Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034. It is not necessary, however, for there to be a previous decision squarely holding that the "very action" the officer took was invalid. *Id.* Defendants have the burden of proving their conduct was reasonable according to clearly established law. *See Dellums,* 566 F.2d at 176–77.

Defendants attempt to establish qualified immunity by asserting that the Capitol Grounds Regulation had not been held unconstitutional at the time the officers arrested plaintiff and, therefore, the officers were justified in relying on that regulation. However, the fact that the regulation had not been held unconstitutional at the time of the false arrest does not give the officers qualified immunity when, in making the arrest, the officers violated another clearly established law. *See Sandul v. Larion,* 119 F.3d 1250, 1254–56 (6th Cir.1997) (holding that the defendant officer was not entitled to qualified immunity for arresting the plaintiff for speech-related conduct, because a reasonable officer should have known that plaintiff's conduct was protected speech and, therefore, that the arrest violated the local disorderly con-

duct ordinance); *Richardson v. Bonds,* 860 F.2d 1427, 1432 (7th Cir.1988) (holding that the defendant officer was "not automatically entitled to [qualified] immunity simply because he relied on a rule authorizing an arrest which had not previously been held invalid" since a court must consider whether, " 'in light of preexisting law the unlawfulness [of the officer's conduct was] apparent' ") (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034); *Koser v. County of Price,* 834 F.Supp. 305, 308–11 (W.D.Wis.1993) (holding that the defendant officers were not entitled to [qualified] immunity for arresting plaintiff under a state flag desecration statute, even though the statute had not been held unconstitutional at the time of the arrest, because a reasonable officer should have known that the plaintiff's conduct was lawful).

In this case, the tourist standard was a clearly established law at the time of plaintiff's arrest. *See, e.g., Hasty,* 669 A.2d at 130–33; *Berg,* 631 A.2d at 398–400; *Reale,* 573 A.2d at 15; *Wheelock,* 552 A.2d at 508. As discussed above, for over a decade, the tourist standard has been required to apply "as a means of determining if a statute, as applied in a particular case, is constitutional." *Reale,* 573 A.2d at 15.[12]

Even though the Capitol Grounds Regulation had not been held unconstitutional at the time of plaintiff's arrest, it is well-established that the tourist standard restricts the scope of the Capitol Grounds Regulation. *See Berg,* 631 A.2d at 398. Defendants have not shown or explained why the officers were justified in ignoring the clearly established tourist standard when they arrested plaintiff. Again, even if defendants had shown that the officers applied the tourist standard, defendants

failed to show that the officers applied the standard reasonably and in good faith. *See Berg,* 631 A.2d at 398–400. Defendants have not shown that the officers acted reasonably or in compliance with the clearly established tourist standard and, therefore, have not met the Supreme Court's requirements for claiming that the officers had qualified immunity against plaintiff's false arrest claims.

### 3. *Statute of Limitations*

■ There is no specific federal statute of limitations that applies to *Bivens* actions. Accordingly, I must look to the law of the local forum, the District of Columbia, for the appropriate statutes of limitations applicable to plaintiff's First and Fourth Amendment *Bivens* claims. *See Reed v. United Transp. Union,* 488 U.S. 319, 323–24, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989); *Burnett v. Grattan,* 468 U.S. 42, 49–50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Importantly, "[a]n appropriate limitations period must be responsive to these characteristics of litigation under the federal statutes[, and a] state law is not 'appropriate' if it fails to take into account practicalities that are involved in litigating [plaintiff's] federal [*Bivens* ] claims and policies that are analogous to the goals of [a *Bivens* cause of action]." *Burnett,* 468 U.S. at 50, 104 S.Ct. 2924 (holding that the appropriate state limitations period for civil rights claims must account for the goals underlying the Civil Rights Act) (internal citations omitted).

**12.** Defendants have failed to support their argument that the D.C.Circuit's failure to address the tourist standard in a 1988 case involving a *Bivens* claim under an earlier version of the D.C. demonstration regulation shows that the "tourist standard" is not "clearly established law." (Defs.' Reply at 18–19 (citing *Kroll v. United States Capitol Police,* 847 F.2d 899 (D.C.Cir.1988)).) Given that the "tourist standard" was not clearly established under that name until after the conduct in *Kroll* took place, *see Reale,* 573 A.2d at 15, it is understandable why the D.C.Circuit's analysis did not address the "tourist standard" as it is currently entitled.

Section 12–301 of the D.C.Code provides in relevant part:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: ...
>
> (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—1 year; ...
>
> (8) for which a limitation is not otherwise specially prescribed—3 years[.]

D.C.Code §§ 12–301(4), (8).

Defendants contend that the constitutional torts alleged in this case are analogous to the common law torts of false arrest and false imprisonment, and, therefore, § 12–301(4)'s one year statute of limitations applies. This Circuit has recognized, however, that "interests respectively protected by federal constitutional law and local assault law are not congruent, and that injuries inflicted by officers acting under color of (legal authority) are significantly different in kind from those resulting from acts of private persons." *Payne v. Government of District of Columbia,* 559 F.2d 809, 817 n. 32 (D.C.Cir.1977) (citing *Bivens,* 403 U.S. at 391–92, 91 S.Ct. 1999).[13]

In *Owens v. Okure,* the Supreme Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions[,]" because constitutional claims "bear little if any resemblance to the common-law intentional tort," and, therefore, applying each state's general limitations provision would ensure uniformity and finality for potential litigants. 488 U.S. 235, 247–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (citing *Hustler Magazine v. Falwell,* 485 U.S. 46, 53, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), for the principle that constitutional torts in the First Amendment context are distinguished from common law intentional torts).

The Supreme Court's decision in *Owens* is relevant to plaintiff's *Bivens* actions in this case. Like § 1983 actions, *Bivens* actions provide remedies for First and Fourth Amendment claims. *See Bivens,* 403 U.S. 388, 91 S.Ct. 1999 (authorizing claims and remedies for Fourth Amendment violations); *Dellums,* 566 F.2d at 194–95 (authorizing *Bivens* claims and remedies for First Amendment violations). The D.C.Circuit has held that the same principles of uniformity and finality apply to *Bivens* actions. *See Williams v. Hill,* 74 F.3d 1339, 1340–41 (D.C.Cir.1996) (holding that the " 'bodies of law relating to the two forms of litigation [42 U.S.C. § 1983 and *Bivens* ] have been assimilated in most ... respects' " (quoting *Doe v. District of Columbia,* 697 F.2d 1115, 1123 (D.C.Cir. 1983))); *see, e.g., Butz v. Economou,* 438 U.S. 478, 498–504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (holding that § 1983 actions and *Bivens* actions apply the same "qualified immunity" rules). Further, "*Bivens* actions [are] the judicially crafted counterpart to section 1983[and] enable victims of federal misconduct to sue the individual federal wrongdoers responsible for the transgression of their rights." *Gibson v. United States,* 781 F.2d 1334, 1341–42 (9th Cir.1986) (holding that California's general four-year statute of limitations provision applied to plaintiff's First Amendment *Bivens* action). Thus, the *Owens* Court's rationale and decision to apply the state's general limitations provision is relevant and applicable here.

The District of Columbia's general limitations provision, § 12–301(8), provides that suits must be brought within three years from the time the cause of action accrues. In *Hobson v. Brennan,* 625

---

**13.** Defendants have not addressed the statute of limitations provision applicable to plaintiff's First Amendment *Bivens* claim, which occurred in conjunction with plaintiff's Fourth Amendment false arrest claim.

F.Supp. 459, 467–68 (D.D.C.1985), the court held that the three-year provision establishes the "general" personal injury statute of limitations period and better reflects the federal interests embodied in *Bivens* actions. *See also Banks v. Chesapeake & Potomac Tel. Co.,* 802 F.2d 1416, 1429 (D.C.Cir.1986) (holding that a three-year statute of limitations under D.C.Code § 12–301(8) applied to plaintiff's § 1981 claims for race discrimination) (citing *Hobson,* 625 F.Supp. at 467–68); *Logiurato v. ACTION,* 490 F.Supp. 84, 90–91 (D.D.C. 1980) (holding that § 12–301(8)'s general limitations provision "applies to constitutional torts," including plaintiff's alleged violations of his First, Fifth and Eighth Amendment rights, which are " 'significantly different in kind from those resulting from acts of private persons' ") (quoting *Payne,* 559 F.2d at 817 n. 32).

Consistent with the Supreme Court's rationale in *Owens,* and this Court's rationale in *Hobson,* the District of Columbia's three-year general limitations provision should apply to plaintiff's *Bivens* actions for First and Fourth Amendment violations. *See also Eikenberry v. Callahan,* 653 F.2d 632, 635 & n. 11 (D.C.Cir.1981) (holding that § 12–301(8)'s three-year limitations period applied to *Bivens* actions that alleged First Amendment violations). Applying the general limitations provision better accounts for the goals of a *Bivens* action, namely, to promote uniformity and finality for potential litigants bringing federal constitutional claims. *See Owens,* 488˙ U.S. 235, 247–50, 109 S.Ct. 573; *Burnett,* 468 U.S. at 50, 104 S.Ct. 2924. Defendants have not shown how their preferred one-year intentional tort limitations period is appropriate for the *Bivens* actions in this case.

Under § 12–301(8), it is "the time the cause of action accrues, and not the time a cause of action arises, that is dispositive."

*Logiurato,* 490 F.Supp. at 91. The "cause of action does not accrue until the tortious activity has ceased." *Id.* Consistent with *Logiurato* and the Supreme Court's decision in *Heck v. Humphrey,* Lederman's claims did not accrue until his criminal charges were dismissed upon his November 30, 1998 acquittal, *see District of Columbia v. Lederman,* No. D–967–97 (D.C.Super.Ct. Nov. 30, 1998) (unpublished opinion). *See Heck,* 512 U.S. 477, 489–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, . . . so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated") (internal citations omitted); *Williams,* 74 F.3d at 1340–41 (holding that the "rationale of *Heck* applies equally to claims against federal officials in *Bivens* actions"). Lederman filed this action on December 16, 1999, well within the three-year statute of limitations period applied to constitutional tort claims.[14]

Defendants have not shown that summary judgment is warranted on plaintiff's *Bivens* claims due to improper service, qualified immunity or statute of limitations bars. First, plaintiff's *Bivens* claims are not barred by insufficient service of process or by the applicable statute of limitations. Therefore, plaintiff's motion for summary judgment on Counts IV and V as to the service of process and statute of limitations issues will be granted, and defendants' motion for summary judgment on Counts IV and V as to these issues will be denied.

Second, the tourist standard was settled, clearly established law that restricted the scope of the original regulation in place during plaintiff's arrest. Therefore, plain-

---

**14.** Finally, it should be noted that plaintiff claimed damages for his constitutional tort claims in his first 1999 complaint. Defendants' delay in raising the statute of limita-

tions issue—when they had the opportunity to do so in response to the first complaint—results only in prejudicing plaintiff's case.

tiff's motion for summary judgment on Counts IV and V as to the qualified immunity issue will be granted insofar as the tourist standard is deemed to apply to the officers' conduct in determining the officers' liability under *Bivens,* and defendants' motion for summary judgment on Counts IV and V as to the tourist standard's applicability will be denied.

Finally, while I find that the tourist standard applies to evaluate the individual officers' conduct in a *Bivens* action, I also find that there is a material, factual dispute as to whether the officers' conduct in arresting plaintiff violated the tourist standard, such that the officers are not entitled to qualified immunity. Therefore, both parties' motions for summary judgment on Counts IV and V will be denied as to whether the individual officers violated the tourist standard when they arrested plaintiff.

*CONCLUSION*

As I held in my March 14, 2000 Opinion, plaintiff has failed to meet his burden of establishing that the Capitol Police Board lacked the statutory authority to enact the no-demonstration zone. In addition, defendants have failed to meet their burden of establishing that the portion of the amended regulation which bans "other expressive conduct or speechmaking that conveys a message supporting or opposing a point of view and has the intent, effect or propensity to attract a crowd or onlookers" within the no-demonstration zone is narrowly tailored to further significant governmental interests. Defendants also have failed to meet their burden of establishing that Capitol Police Officers Abrecht, Loughery and McQuay, acting in their official capacities, did not violate the FTCA when they arrested plaintiff. Finally, defendants have failed to meet their burden of establishing that Officers Loughery and McQuay, acting in their individual capaci-

ties, did not violate plaintiff's First and Fourth Amendment rights when they arrested plaintiff.

Accordingly, I will (1) deny defendants' motion for reconsideration of the public forum aspect of my March 14, 2000 ruling; (2) grant defendants' motion for clarification as to the public forum status of the East Front Sidewalk; (3) dismiss Count II of plaintiff's amended complaint; (4) deny defendants' motion for summary judgment on Count I; (5) grant plaintiff's cross-motion for summary judgment on Count I; (6) declare that the portion of the amended regulation which bans "other expressive conduct or speechmaking that conveys a message supporting or opposing a point of view and has the intent, effect or propensity to attract a crowd or onlookers" is unconstitutional on its face; (7) permanently enjoin the federal defendants from enforcement of that provision; [15] (8) deny defendants' motion for summary judgment on Counts III, IV and V as to the tourist standard's applicability; (9) grant plaintiff's cross-motion for summary judgment on Counts III, IV and V as to the tourist standard's applicability; and (10) deny both parties' motions for summary judgment on Counts III, IV and V as to whether defendants reasonably applied the tourist standard when they arrested plaintiff. An appropriate Order accompanies this Opinion.

*ORDER*

For the reasons set forth in the accompanying Memorandum Opinion issued this day, it is hereby

ORDERED that the federal defendants' Motion for Reconsideration or, in the Alternative, for Clarification [38] be, and hereby is, GRANTED IN PART and DENIED IN PART. It is further

ORDERED that the federal defendants' Motion to Dismiss or, in the Alternative,

---

**15.** As in my earlier decision, enjoining the District of Columbia defendants is unnecessary, because the federal defendants' compli-

ance will produce no cases for the District defendants to prosecute. *Lederman,* 89 F.Supp.2d at 43 n. 13.

**64**

for Summary Judgment [46] be, and hereby is, DENIED with respect to Counts I, III, IV and V and GRANTED with respect to Count II. It is further

ORDERED that plaintiff's Cross–Motion for Partial Summary Judgment [59] be, and hereby is, GRANTED with respect to Counts I, GRANTED IN PART and DENIED IN PART with respect to Counts III, IV and V, and DENIED with respect to Count II. It is further

ORDERED that Count II of plaintiff's Amended Complaint be, and hereby is, DISMISSED. It is further

DECLARED that the portion of Article XIX, section 158(a) of the Capitol Police Board Traffic and Motor Vehicle Regulations for the United States Capitol Grounds as amended in March 2000, which bans "other expressive conduct or speechmaking that conveys a message supporting or opposing a point of view and has the intent, effect or propensity to attract a crowd or onlookers" where demonstration activities are prohibited violates the First Amendment to the United States Constitution and is therefore unlawful and invalid. It is further

ORDERED that the federal defendants be, and hereby are, ENJOINED from enforcing the provision of the Traffic and Motor Vehicle Regulations for the United States Capitol Grounds identified in the previous paragraph. As used here, the term "enforcing" includes all forms of enforcement activity, including arrest; issuance of a warning, citation, or ticket; and referral for prosecution. It is further

ORDERED that nothing in this injunction shall be construed to prevent the defendants from enforcing any generally applicable statutes, rules, or regulations (other than those subject to the injunction above) in a nondiscriminatory and nonretaliatory manner. It is further

ORDERED that the federal defendants inform all officers of the United States Capitol Police of the requirements of this injunction no later than, 2001. It is further

ORDERED that this injunction shall be binding on the federal defendants; on the officers, agents, servants, employees, and attorneys of the federal defendants; and on all persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise. It is further

ORDERED that in view of the relief granted above, plaintiff's Motion for Preliminary Injunction [75] be, and hereby is, DENIED as moot. It is further

ORDERED that all other pending motions be, and hereby are, DENIED as moot.